STATE v. JOHN S. PILLSBURY.[1]

February 6, 1901.

Nos. 12,439—(25).

## City of Minneapolis—Local Improvement—Notice.

In the charter of the city of Minneapolis (chapter 10, § 8), relating to special improvements and assessments therefor, it is provided that when the city council shall determine to make a certain improvement, and shall designate in a general way the character and extent thereof, and the material to be used, the city engineer shall make and report to the council an estimate of the cost, and various other matters, and that a brief minute of the reception of such report shall be made and published in the record of the proceedings of the city council, which publication shall be held to be sufficient notice to all persons concerned. *Held*, that the publication provided for is sufficient notice to the property owner of the instituting of the proceedings in question; and *held*, also, that under other provisions of the same section he is given an opportunity to be heard before the council in respect to all matters involved in the proposed improvements.

## Assessment for Sewer—"Second Plan."

The manner and method provided in the charter (chapter 10, § 8) for assessing and apportioning taxes upon abutting property where a sewer has been constructed in the street upon which such property fronts, known as the "Second Plan," cannot be sustained. The assessment and apportionment under this plan are arbitrary and unlawful. The basis which must govern in such cases, viz. that the abutting property is peculiarly and specially benefited by the improvement, and therefore benefits must be considered, is wholly ignored. These provisions are repugnant to article 1, § 13, and article 9, § 1, of the state constitution, and also to section 1 of the fourteenth amendment to the constitution of the United States.

## Modification of Judgment.

Under the allegations of the answer and a stipulation of facts made by the parties, it is *held* that the court below was in error when it ordered, in effect, that a certain part of the assessment for the sewer in question, equal to the cost and also equal to the benefits to the property, should be excluded from the judgment.

In proceedings in the district court for Hennepin county to en-

[1] Reported in 85 N. W. 175.

force payment of delinquent taxes on real estate, John S. Pillsbury interposed an answer and defense so far as judgment was demanded for an instalment of an assessment levied against defendant's land for construction of a sewer in front thereof. The case was tried before Pond, J., who found in favor of defendant, and certified to the supreme court for its determination the following points:

1. Do the provisions of the charter under which the sewer was constructed, and the assessment levied therefor, contravene Const. art. 9, § 1, in that they create inequality of taxation?

2. Do said provisions contravene Const. art. 1, § 13, and Const. (U. S.) amend. 14, § 1, in that they authorize the taking of private property for public uses without just compensation therefor?

3. Do said provisions contravene Const. (U. S.) amend. 14, § 1, in that they deprive a person of his property without due process of law?

4. Are said provisions in violation of the state and federal constitutions, and illegal and void?

5. Is plaintiff entitled to recover any part of said local assessment?

Modified.

*Louis A. Reed*, County Attorney, *C. S. Jelley, J. M. Pulliam* and *L. A. Dunn*, for plaintiff.

The provisions of the charter, under which the sewer was constructed and the assessment levied, do not contravene section 1, art. 9, of the state constitution in that they create inequality of taxation. Comer v. Folsom, 13 Minn. 205 (219); Sanborn v. Commissioners of Rice Co., 9 Minn. 258 (273); Parsons v. District of Columbia, 170 U. S. 45. Nor do the provisions of the charter contravene section 1, art. 9, of the state constitution, nor section 1 of the fourteenth amendment to the federal constitution. It was competent for the legislature to provide the notice prescribed by the provisions of the charter. Such notice constitutes due process of law, and the notice, having been given in the manner required by the charter, was sufficient. It is sufficient to give defendant an opportunity to be heard under the general statutes

in proceedings to enforce the collection of the assessment, and defendant has had the required opportunity to be heard upon all objections, and therefore has had his day in court. County of Hennepin v. Bartleson, 37 Minn. 343; State v. Reis, 38 Minn. 371; Rogers v. City of St. Paul, 22 Minn. 494; Carpenter v. City of St. Paul, 23 Minn. 232; State v. Board of Public Works, 27 Minn. 442.

Under the rule laid down by some of the authorities, all that is ever required in the way of notice to constitute due process of law is that the property owner have an opportunity at some time before some tribunal authorized to have a hearing with reference to the improvement and to make his objections. The weight of authority probably sustains this position, although there are well-considered cases which hold that no notice in case of assessments is required, either under the state or federal constitutions. Scott v. City of Toledo, 36 Fed. 385; Beaumont v. Wilkes-Barre, 142 Pa. St. 198; 25 Am. & Eng. Enc. 546, note 548; Garvin v. Daussman, 114 Ind. 429; Law v. Johnston, 118 Ind. 261; Davidson v. New Orleans, 96 U. S. 97; Nevin v. Roach, 86 Ky. 492; Yeomans v. Riddle, 84 Iowa, 147; Allen v. Armstrong, 16 Iowa, 508; Stewart v. Board, 30 Iowa, 9, 28; Nichols v. City, 23 Conn. 189.

Defendant, by defending under the provisions of the general law against the collection of the assessment, had in the trial court an opportunity to raise all objections that could have been raised at any stage of the proceedings, and to receive full consideration from the court on all such objections. This is especially true in this case, as the objections raised go to the validity of the law itself, and not to the regularity of any of the proceedings of the city in ordering the improvement or the levying of the assessment or of any of the proceedings with reference thereto. Such being the case, defendant cannot claim that he has been deprived of any of his constitutional rights. If that be true, he cannot be heard at this time to question the legality of the notice prescribed or of any of the proceedings with reference to making the improvement or assessments. Spencer v. Merchant, 125 U. S. 345; McEneney v. Town, 125 Ind. 407; Walker v. Boston, 3 Cush. 1; City v. Eastern, 98 Mass. 431; Mason v. Messenger, 17 Iowa, 261; In matter of Village of Middletown, 82 N. Y. 196; Barber v. Edgerton, 125 Ind.

455; Scott v. City of Toledo, supra; Adams v. Fisher, 63 Tex. 651; City v. Heard, 54 Tex. 420, 429; 2 Dillon, Mun. Corp. § 803; Finnell v. Kates, 19 Oh. St. 405; Highland v. City, 54 Tex. 527, 534. By weight of authority, it seems to be fairly well settled that some notice at some stage of the proceedings must be given and an opportunity at some time must be afforded to the owner to be heard and to defend; also that where notice is required by the law by express terms, such notice must be given. There are numerous well-settled cases, however, where it is held that no notice is necessary in levying special assessments for public improvements under either the state or federal constitution, more than is given by the proceedings and the provisions of the law itself authorizing such assessments to be made in the manner prescribed. Davis v. City, 84 Va. 861; Finnell v. Kates, supra; Inhabitants v. Morton, 25 Mo. 593; Cleveland v. Tripp, 13 R. I. 50; In matter of De Peyster, 80 N. Y. 565; Dunning v. Township, 44 Mich. 518. See Kelly v. Minneapolis City, 57 Minn. 294.

Judgment should have been rendered for at least the actual cost per front foot of the sewer in front of defendant's premises. Norwood v. Baker, 172 U. S. 269, is distinguishable. Cass Farm v. City, 124 Mich. 433; Heman v. Allen, 156 Mo. 534; Webster v. City, 9 N. D. 208; State v. District Court, 80 Minn. 293.

*Fred B. Snyder*, for defendant.

The assessment is void for the want of equality. Benefits should be the basis of assessment. While under the 1869 amendment of Const. art. 9, § 1, it is possible for the legislature to provide for apportionment of the tax on the property fronting or the property benefited, or both, the general rule that taxes shall be as nearly equal as may be is not abrogated or changed. Noonan v. City of Stillwater, 33 Minn. 198, 202; State v. District Court of Hennepin Co., 33 Minn. 235, 245; State v. District Court of Ramsey Co., 33 Minn. 295, 306. See Stinson v. Smith, 8 Minn. 326 (366). The amendment does not empower the legislature to authorize an assessment wholly disregarding the fundamental rule of benefits. A distinction in this respect should not be made between the

power to make an assessment on property fronting on the improvement from the power to place it upon the property benefited. State v. District Court of Hennepin Co., supra; Noonan v. City of Stillwater, supra; State v. District Court of Ramsey Co., supra; City v. Reis, 38 Minn. 371, 373.

The limitations placed on the legislature by the foregoing provision are that it may authorize municipal corporations to make an assessment, so long as it does not violate the rules of uniformity and equality for local improvements by the front foot or on the property benefited, or both, in such a manner as it may prescribe. 2 Dillon, Mun. Corp. (4th Ed.) § 761; State v. District Court of Hennepin Co., supra. In carrying out its power, the legislature in its discretion may, having regard to benefits, determine what amount should be raised and for what purpose, and mark out the boundaries of the tax district. Or it may in its discretion provide that some subordinate authority may determine the amount to be raised, the purpose of raising it, and the limitation of the district in which it is to be raised, always bearing in mind that the purpose of the tax must pertain to the tax district. Rogers v. City of St. Paul, 22 Minn. 494, 510; State v. District Court of St. Louis Co., 61 Minn. 542, 547; City v. Judge, 112 Mich. 588; 2 Dillon, Mun. Corp. (4th Ed.) § 762; Thomas v. Gain, 35 Mich. 155, 14 L. R. A. 759, note; Asberry v. City, 91 Va. 562.

The assessment is void by reason of inequality. The very resolution under which the assessment is made is fraudulent on its face. Minnesota Linseed Oil Co. v. Palmer, 20 Minn. 424 (468). The assessment was made at a rate established twelve years before the sewer was constructed. The question of benefits was wholly disregarded. The right to question the validity of the assessment is denied by the charter. The assessment may be, as in this case, sixty per cent. more than the local improvement cost. The excess cannot be recovered because it is not kept separate. Possibly three-fourths of the proportion of the excess of the money raised in one season over the total cost of all sewers for that season may be returned to taxpayer. The taxpayer who pays an assessment for a sewer in front of his own property contributes toward the construction of a local improve-

ment in a distant part of the city, toward which the general taxpayer does not pay the same proportion.

The plan under which the assessment was made is void because it takes private property for public use without just compensation. Cooley, Taxn. (2d Ed.) 746; 2 Dillon, Mun. Corp. (4th Ed.) § 761; Norwood v. Baker, 172 U. S. 269; Hutcheson v. Storrie, 92 Tex. 685; Loeb v. Trustees of Columbia Tp., 91 Fed. 37; Fay v. City of Springfield, 94 Fed. 409; Charles v. City of Marion, 98 Fed. 166, 100 Fed. 538; Lyon v. Town of Tonawanda, 98 Fed. 361; Cowley v. City of Spokane, 99 Fed. 840; Sears v. Street, 173 Mass. 350; Adams v. City, 154 Ind. 467; McKee v. Town, 154 Ind. 652; Dexter v. City, 176 Mass. 247; Bidwell v. Huff, 103 Fed. 362; Parker v. City of Detroit, 103 Fed. 357; 51 Cent. L. J. 243, 423, 460; Cooley, Taxn. (2d Ed.) 661; In matter of Canal Street, 11 Wend. 155. The city council under the second plan arbitrarily fixes a flat rate, in theory regulated at such amount as will, when used as a multiple against the total number of feet of property fronting on sewers constructed in one season, produce an amount which will, irrespective of the question of benefits, pay for all such sewers excepting only street crossings and exempt property. Therefore in all cases where the flat rate is more than the actual cost of a sewer the excess so taken from the taxpayer is necessarily used to pay the excess of the cost of a sewer in some other part of the city, entirely ignoring the question of benefits. McCormack v. Patchin, 53 Mo. 33, 36; State v. Mayor, 36 N. J. L. 291, 293; State v. Mayor, 37 N. J. L. 415; Hammett v. Philadelphia, 65 Pa. St. 146; Tide-Water v. Coster, 18 N. J. Eq. 518, 527.

It is true that some authorities hold that it is within the power of the legislature, not only to determine a particular district in which a tax for special purpose is to be raised, but also to determine definitely the apportionment of the tax, ignoring the right of the property holder to dispute the same by showing that he has not been benefited to the extent of the tax. The most recent and most thoroughly considered case on this side of the question is Rolph v. City, 7 N. D. 640, subsequently approved and followed in Webster v. City, 9 N. D. 208. In considering these cases the provisions of the constitution of North Dakota should be in-

spected. Since Norwood v. Baker, supra, certain other states have rendered decisions either adverse to or criticising the principle laid down in that case. Cass Farm v. City, 124 Mich. 433; Heman v. Allen, 156 Mo. 534; Conde v. City, 164 N. Y. 258; Hadley v. Dague, 130 Cal. 207; Barber v. Ess, 158 Mo. 557. See also criticism of Norwood v. Baker in 14 Harvard L. Rev. 1–98. These decisions are based on a false assumption of the functions of the legislature. They all proceed on the theory that the determination of what constitutes a benefit and what is its value are functions of the legislature, whereas they are in fact judicial functions. 2 Dillon, Mun. Corp. (4th Ed.) § 802 A; Reagan v. Farmers L. & T. Co., 154 U. S. 362, 399; Norfolk v. Ellis, 26 Grat. 224, 242. See 51 Cent. L. J. 460.

The assessment is void for want of due process of law. It is essential to due process of law that notice of time and place of hearing should be given, and also that there should be a tribunal clothed with power by methods and rules prescribed by law to hear and determine the question involved. Bardwell v. Collins, 44 Minn. 97, 101; State v. Billings, 55 Minn. 467; Charles v. City of Marion, supra. Even if the notice provided in the charter could be deemed sufficient, a taxpayer would be deprived of his right to a fair hearing before an impartial tribunal, for the reason set forth in the provision of the city charter defining the powers of the council with regard to the assessment when the hearing takes place. Those powers are to adhere to its resolution of making such improvement, or to modify the character of the same, or to abandon it. Inasmuch as the rate at which the assessment was to be made was established long before the sewer was even ordered, the question of benefits would not come up for consideration. The taxpayer might dispute the mathematical correctness of the computation; he might induce the council to annul their action in ordering the sewer; he might induce them to modify the size of the sewer or the material to be used; he might induce them wholly to abandon it; but beyond this he has no rights whatever, nor is the council clothed with power to hear him further. Parker v. City of Detroit, supra.

The assessment, if not wholly void, is at least void as to the

excess of the assessment over the cost, assuming the cost to equal the benefits. See Fay v. City of Springfield, 94 Fed. 409, 417. The trial court did not err in shutting out all evidence as to benefits, for the reason that the city council has no power at any stage of the proceedings either originally or upon reassessment to consider the question of benefits, and can never arrive at a just apportionment of an assessment.

COLLINS, J.

In this proceeding plaintiff seeks to enforce the payment of taxes upon real estate becoming delinquent on the first Monday in January, 1900. The amount sought to be collected was something over $500, and the real estate involved was certain lots in the city of Minneapolis. No defense was interposed to any portion of the tax, except the sum of $171.70, which, it appears, is the second instalment of a total assessment levied against the lots for the construction of a sewer in the street in front thereof. It stands admitted that all proceedings for the establishment and construction of the sewer, and assessment and levy of the tax, were regular in form and strictly pursuant to the charter provisions; but the defense raises the question that said provisions are unconstitutional and void, for a number of reasons. The court below having ordered judgment for the defendant as to the sewer assessment, and to the full amount of the instalment, it has certified to this court five questions, which need not be specifically mentioned as answered.

It must be conceded that the assessment in question was made under the provisions of an amendment to the city charter, which is Sp. Laws 1881, c. 76, found in Sp. Laws 1883, c. 3, §§ 18, 19, and known as the "Second Plan" for the construction of sewers. No particular reference need be made at this time to what is known under the charter as the "First Plan." The second relates to all sewers constructed, relaid, or extended throughout the whole city during any one season. It contemplates that at the end of the season the cost of all sewers constructed during that period shall be marshaled for the purpose of ascertaining the total or entire cost, and thereupon the council shall levy and proceed to collect from abutting property an equal sum per front foot, without

regard to the valuation of such property, or the size or cost of the sewer, which sum shall not exceed $4 per lineal foot. The rate per lineal foot, not in excess of $4, is to be fixed by resolution of the council, and one-half of that rate or amount is to be levied and assessed upon property abutting upon each side of the street. When this rate is once fixed by resolution, it remains, from year to year, as such rate, until affirmatively changed by resolution of the council, or until the council decides to pursue the so-called first plan for the construction and assessment for sewers. The cost of sewers constructed in front of exempt property and across streets, and the cost of any particular sewer over and above the amount assessed, is, under the second plan, to be paid out of what is known as the "Permanant Improvement Fund."

It will be seen that under this plan the council is authorized to assess against abutting property a flat rate per lineal foot, without regard to actual benefits or to the cost of construction, for which the assessment is made. The rate may be more or less than the benefits or the cost. If the amount of the assessment exceeds the actual cost, the surplus, when collected, goes, we infer, into the permanent improvement fund. If less, the deficiency in cost is paid out of this same fund. There is a general provision requiring the council, when it determines upon the laying of a sewer upon any particular street or streets, which must be specifically named, to designate in a general way the character and extent of the improvement and the materials to be used. It is then made the duty of the city engineer to present a report to the council containing certain information, and, if the first plan is being followed, an estimate of the cost and certain apportionments thereof. If the second plan is adopted, the report need not contain this estimate or apportionment. Then follows this provision, and it is the only one in the charter in reference to notice to interested parties:

"A brief minute of the reception of such report shall be made and published in the record of the proceedings of the city council, which shall be held to be sufficient notice to all persons concerned." Sp. Laws 1881, p. 481 (c. 76, subc. 10, § 8).

It is then prescribed that such report shall lie over, without any assessment being made, until the next regular meeting of the council, which shall occur at least one week after its reception. The city council shall then hear all persons interested in the matter of such proposed construction who may desire to be heard, and after this hearing the council may adhere to its resolution, or it may modify its character, or it may abandon the improvement altogether.

In this particular case the report of the engineer was made in strict compliance with the requirements of the charter, it was received by the city council at its regular meeting, a minute was made in the records and properly published in full, and no further steps were taken until the council meeting, at which a hearing is granted to all parties concerned; and at this meeting the original resolution was adhered to, or, to speak more properly, it was not departed from. And, as before stated, it stands admitted that the requirements of the charter were faithfully and technically observed. The assessment roll was then transferred to the county auditor, the amount of the assessment extended upon his books with other taxes against the defendant's lots, and thereafter the proceedings for the collection and enforcement thereof were under and in accordance with the general laws of the state; the answer interposed by defendant and the subsequent proceedings being under such general laws.

Having thus given an outline of the proceedings under the charter in all cases in which the second plan has been adopted, we reach the initial question in this case; the defendant's contention being that this method of procedure deprives the owner of his property without due process of law, because there is no sufficient provision in the charter for notice to him of the contemplated improvement, and no opportunity afforded him to be heard. He is thus, argues counsel, deprived of his right to be heard before the improvement is made, and the assessment, which may exceed the cost and also the benefits, is levied.

But under the constitution (amendatory proviso of 1869, art. 9, § 1) the legislature may prescribe the manner in which assessments for local improvements may be made upon property front-

ing thereon, or upon benefited property, or upon both; and the provision necessarily confers upon the legislature the power to prescribe the kind of notice, and the manner or method of service upon the lot owners. The charter expressly provides that a brief minute of the reception of the report of the engineer to the council, made and published in the proceedings of that body, shall be sufficient notice to all persons concerned. This publication is notice to all of the commencement of the proceedings, and is sufficient for the purpose, under the decisions in Rogers v. City of St. Paul, 22 Minn. 494; State v. District Court of Ramsey Co., 33 Minn. 295, 23 N. W. 222; County of Hennepin v. Bartleson, 37 Minn. 343, 34 N. W. 222. And the property owner is given an opportunity to be heard before the city council, of which opportunity he had notice, not personal, to be sure, but that authorized by law,—the publication in the council proceedings of a minute of the engineer's report. The city council is made the proper tribunal to hear all objections of all persons upon all matters connected with the improvement. Any party interested has an opportunity to be heard as to the size, form, depth of sewer, and the material to be used. He may be heard upon the propriety or impropriety of building the sewer at all, and, in the judgment of the council, the original resolution may be modified as to the nature of the improvement, or the latter may be totally abandoned. · Plenary power is conferred upon the council to exercise its discretion in the whole matter, after a hearing of all interested parties.

In addition to what has been said in the cases cited as to the sufficiency of the prescribed notice to interested parties, we call attention to the fact that any objections to the regularity and legality of these assessment proceedings may be taken, as they have been here, by answer in the attempt to enforce the collection of taxes under the general law. As was said in the Bartleson case upon this same point:

"Any objections of the landowner to the regularity or legality of the proceedings may be taken by him by answer, as in other cases under the general law. * * * He may show fraud, mistake, want of authority to support the assessment, or a failure to

comply with the provisions of the statute. His constitutional rights are therefore fully protected."

See also City of Duluth v. Dibblee, 62 Minn. 18, 63 N. W. 1117; Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. 921.

The defendant's right to be heard before being deprived of his property was adequately protected. He was given an opportunity to be heard under the charter provision before referred to, and he was also given a like opportunity when he answered under the general tax law. It follows from what has been said that we are unable to agree with the conclusion of the learned court below, in effect, that the property owner is deprived of his constitutional right to have due notice of a proceeding which might result in devesting him of his property.

The next inquiry in this case is as to the constitutionality of the charter provisions—the second plan—under which the sewer in question was built, it being claimed that for a number of reasons they are opposed to both state and federal constitutions.

It will be remembered that prior to 1869 section 1, art. 9, of our state constitution did not contain a special provision ·in regard to assessments for local improvements. The original provision was that

"All taxes to be raised in this state shall be as nearly equal as may be, and all property on which taxes are to be levied shall have a cash valuation and be equalized and uniform throughout the state."

In Stinson v. Smith, 8 Minn. 326 (366) this original provision was construed, and it was held that an assessment for grading streets must be apportioned upon the basis of the valuation of the property upon which the assessment was made, and that any act of the legislature authorizing such an assessment upon any other basis was repugnant thereto. This decision led to .the adoption of the 1869 amendment before mentioned, whereby the basis of assessment for local improvements was changed, and it was no longer necessary to base such assessments with strict regard to the valuation of the premises on which the assessment was laid. But in Noonan v. City of Stillwater, 33 Minn. 198, 22 N. W. 444, it was expressly declared that in adopting this amend-

ment the people did not intend to reject or modify, in respect to taxes of this class, so just and reasonable a principle as that they "shall be as nearly equal as may be"; and it was said that, whatever basis of apportionment (assessment) may be adopted, it must include the idea of equality. The gist of this decision is that, while the amendment empowered the legislature to apportion and assess according to street frontage, it does not authorize an assessment on that plan wholly disregarding the fundamental rule upon which special assessments are made, namely, that of benefits.

This same general doctrine has been approved a number of times since, and it is clear that while the legislature may authorize municipal corporations to assess for local improvements upon property fronting on the improvement, or on property benefited, or both, in such manner as it may prescribe, such legislation must not authorize a departure from, or a variation of, the previously existing rule of uniformity and equality. No plan can be adopted which will result in gross inequality of taxation. The burden must be apportioned as uniformly and as equally as may be. The legislature cannot fix, or authorize the governing body of a municipality to fix, an arbitrary basis for an assessment to be imposed upon property without regard to benefits. If this be done, the principle which justifies special assessments on abutting property, namely, that it is thereby specially and peculiarly benefited, is wholly ignored; the result being that under the guise of taxation the owner is deprived of his property without just compensation, and for the use of the public. As stated in Cooley, Taxn. (2d Ed.) 661:

"There can be no justification for any proceeding which charges the land with an assessment greater than the benefits; it is a plain case of appropriating private property to public uses without compensation."

This same proposition is tersely and pointedly put in a Missouri case in the following words:

"A law which would attempt to make one person or a given number of persons, under the guise of local assessments, pay a general revenue for the public at large, would not be an exercise

of the taxing power, but an act of confiscation." McCormack v. Patchin, 53 Mo. 33, 36.

But we need not dwell further·upon the powers of a legislature to determine, or to confer authority to determine, the basis upon which assessments for local improvements must be made, or the manner and method of apportionment. It has been discussed this term in the case of Ramsey Co. v. Robert P. Lewis Co., infra, page 390, in which Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, was considered and regarded as controlling. We have simply to apply the well-settled rules to the case at bar,—in fact, to all cases where the second plan of assessment has been followed, the details of which we have hereinbefore stated.

Twelve years prior to the time this particular improvement was determined upon, a resolution was adopted by the council, in which was fixed the amount of assessment to be made upon property fronting on streets in which sewers had been constructed that year, to wit, $3 per lineal foot; and this resolution and the amount so fixed continued in force, under the charter, until another resolution or another amount or another plan of apportionment should be adopted. This resolution, with all of its details, was adopted, so far as shown, without regard to any benefits which might accrue to the assessed property. It was followed· and made the basis of the assessment against defendant's property without the slightest regard to the benefits to such property arising out of the improvement. No consideration was given to the fact that the cost of this particular sewer was but $1.86 per lineal foot, and that the assessment was sixty per cent. in excess of this cost.

The charter contains no provision whatever under which benefits to the property against which an assessment is ordered may be ascertained or even considered. The council arbitrarily, and many years in advance, determined and declared what amount should be assessed against defendant's property whenever a sewer should be constructed in the street upon which it fronted. The charter authorizes this method, and none other, except that, at the option of the council, the first plan may be adopted. Of course, the amount to be assessed per lineal foot of frontage

might be increased, not to exceed a total of $4 per foot, or might be decreased, at the will of the council, but at no time was this body obliged to consider or ascertain benefits. No plan of assessment can be upheld which will permit such an outrageous departure from the principle of uniformity and equality in taxation embodied in the constitution as will this one now being considered.

There are other provisions of the charter to which attention has been called by counsel. One is to the effect that, when the total cost of any improvement for which special assessments have been levied shall be less than ninety per cent. of the total special assessments levied or collected for the same, the city council may refund out of the permanent improvement fund to such property owners as have paid their assessments three-fourths of their proportionate share of the excess of such assessments so collected, over the total cost of such improvements. Exactly what this means is not very clear, and whether it could be made to apply to assessments made under the second plan is in great doubt. But, more than this, there are several reasons why this provision is not only inoperative, but insufficient as a means of redress to the person whose property has been assessed. But two need be mentioned: He is obliged to pay the illegal tax before he can have any standing at all with the council, and then refundment of the excess is optional with that body. It may or may not return the "proportionate share of the excess," whatever that means. There is a total absence of any provision under which the city council or the city itself can be compelled to recognize the principle which governs in cases of assessments for local improvements, and to refund any sum whatever to the property owner. In Norwood v. Baker, supra (page 279), is found the following language, which is extremely pertinent, in this connection, to the present case:

"In our judgment the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation. We say 'substantial excess,' because exact equality of taxation is not always attainable,

and for that reason the excess of cost over special benefits, unless it be of a material character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment."

The manner and method of procedure provided for in the city charter known as the "Second Plan" is obnoxious both to the state and federal constitutions.

This brings us to the final question certified up. In his answer defendant alleged, among other things, that the actual share of the cost of the sewer in question assessable and apportionable upon his lots was a stated sum, and, further, that he was entitled to have credited on the amount of taxes claimed to be due the difference between such share of the cost and the amount assessed, with interest. Judgment to this effect was demanded if the trial court failed to declare the sewer tax wholly null and void. At the trial there was a stipulation of facts in which defendant candidly admitted that his property was benefited to the amount of one-half of the actual cost per lineal foot of the sewer in front thereof, and further stipulated that he had offered to pay to the proper authorities all of the taxes assessed and claimed by the state, except the excess thereof over and above the actual cost of the sewer, which offer was refused. In legal effect the allegations in the answer and the facts stipulated on the trial, above alluded to, amounted to an offer to pay a sum equal in amount to the value of the benefits actually conferred; and we see no reason why the offer so fairly and honorably made should have been rejected, as it was in the court below, the conclusion being that no portion of the sewer tax should be included in the judgment.

From what has been said it is evident that we hold that the provisions of the charter under which the assessment was made and the tax therefor extended upon the list contravene and are obnoxious to section 13 of article 1, and section 1 of article 9, of the state constitution, and are also repugnant to section 1 of the fourteenth amendment to the constitution of the United States. We answer in the affirmative the certified questions numbered from 1 to 4, inclusive. And under the circumstances appearing

here, and without considering the right of the state to enforce collection of a part of his assessment levied in accordance with the charter provisions in question, we also answer the fifth question in the affirmative.

The case is remanded, with directions to the court below to cause an entry of judgment in accordance with these views.