STATE ex rel. OLIVER IRON MINING COMPANY v. CITY OF ELY and Others.

OLIVER IRON MINING COMPANY v. CITY OF ELY and Others.[1]

March 12, 1915.

Nos. 19,008, 19,009—(235, 236).

**Taxation — amount levied — limit.**

1. The state, by virtue of its sovereignty, has an inherent power to tax

[1] Reported in 151 N. W. 545.

---

Note.—The authorities on the rule that assessment for drains and sewers depends on benefit are gathered in a note in 58 L.R.A. 358. And as to the necessity

limited only by the restrictions imposed by the Constitution; but municipal corporations have no such inherent power, and can tax only in the manner and to the extent authorized by law.

**Same — assessment for local improvement.**

2. Special assessments for local improvements are based upon the theory that the property assessed is specially benefited; and, if in excess of such benefits, constitute a taking of property without compensation.

**Construction of statute — home-rule charter.**

3. The rule requiring statutes to be so construed as not to infringe constitutional inhibitions, if reasonably susceptible of such construction, applies to so-called home-rule city charters, and the provisions of such charters are not to be held void if they can reasonably be construed so as not to transgress such inhibitions.

**Amount of special assessment — presumption.**

4. The only limitations upon the power to levy special assessments are: That they be uniform upon the same class of property, be confined to property specially benefited, and do not exceed such special benefits; and a charter provision requiring that the cost of constructing sewers and street improvements be assessed upon the abutting property according to the frontage rule, does not infringe such limitations. The legislative judgment that such property is benefited to the extent of the assessment and in proportion to frontage is presumed to be correct until the contrary appears.

**Apportionment of assessment against corner lot.**

5. A provision which, in effect, permits the council to apportion the cost of an improvement, extending along a corner lot lengthwise, upon such lot and the inside lots lying between such lot and the center line of the block, does not violate the uniformity rule.

**Levy according to frontage.**

6. Levying special assessments according to the frontage rule does not violate the Fourteenth amendment to the Federal Constitution.

---

of special benefit to sustain assessment for local improvement, see note in 14 L.R.A. 755.

On the question of the assessment of a corner lot, see note in 50 L.R.A. (N.S.) 922.

The question of assessments for improvements by the frontfoot rule is discussed in an extensive note in 28 L.R.A. (N.S.) 1124. And for the constitutionality of the frontage rule of assessment, see note in 17 L.R.A. 330.

Upon the general liability of a municipality which is unable or has failed to enforce assessments for local improvements, see note in 32 L.R.A. (N.S.) 163.

City contracts — levy of assessments — mandamus — injunction.

7. The city of Ely entered into contracts for the construction of sewers and street improvements, whereby it assumed a general and unlimited obligation to pay for doing such work. *Held*: That the city charter authorized the making of such contracts; that it gave the council power to provide the funds to pay the liabilities so assumed; that it did not require such payments to be made from the proceeds of special assessments nor from any particular fund; but that it did require the council to levy and enforce special assessments against the property benefited to reimburse the city for such expenditures. *Held* further: That a general taxpayer may, by *mandamus*, compel the city council to levy and enforce such special assessments; but that he cannot enjoin the city from paying for the construction of such improvements at the time and in the manner stipulated in its contracts.

Upon the relation of the Oliver Iron Mining Co. the district court for St. Louis county granted an alternative writ of *mandamus*, directing the city of Ely, its mayor, clerk and aldermen to levy against and collect from property abutting upon the local improvements described the amounts required by the charter of that city to be levied thereon; to refrain from paying out of the city treasury any further sums on account of such improvements, and in no event to pay out more than one-third of the contract price therefor, or show cause why they had not done so. Plaintiff demurred to the answer.

Action in the same court to restrain defendant city and its clerk and treasurer from paying to exceed one-third of the cost of certain local improvements from the city treasury, and to require the city to assess and collect two-thirds of the cost from abutting property.

The two proceedings were tried together before Fesler, J., who granted a peremptory writ and ordered judgment in favor of plaintiff in the injunction suit. From an order denying defendants' motion for a new trial in the *mandamus* proceeding, and from the judgment entered pursuant to the order for judgment in the injunction proceeding, defendants appealed. Affirmed in the *mandamus* proceeding; reversed in the injunction proceeding.

*A. J. Thomas* and *W. G. Bonham,* for appellants.

*Washburn, Bailey & Mitchell,* for respondents.

*Warner E. Whipple,* as *amicus curiae,* filed a brief in behalf of D. H. Clough & Co.

TAYLOR, C.

The city of Ely is a city of the fourth class governed by a so-called home-rule charter adopted in 1903. On March 20, 1913, the city duly contracted with D. H. Clough & Co. for the construction of cement sidewalks, curbs and gutters upon certain streets of the city at an estimated expense of $24,465.10. On the same date, the city also contracted with K. S. Johnson for the construction of a sewer at an estimated expense of $6,730.68. Both contractors entered upon the performance of their respective contracts and received payments thereon as the work progressed.

Sections 5 and 11 of chapter 9 of the city charter are as follows:

Sec. 5. "The expense of constructing, filling, grading, paving, planking, macadamizing any street, highway, avenue, alley, sewer, gutter or ditch in said city shall be chargeable to the lots or parcels of land abutting upon such street, highway, avenue, alley, sewer, gutter or ditch in proportion to the frontage of such lots or parcels of land on such street, highway, avenue, alley, sewer, gutter or ditch, without regard to the value thereof. Streets, avenues or alleys which intersect or cross any such sewer, gutter or ditch, or any such street, highway, avenue or alley so being improved, shall not be deemed to abut on such sewer, gutter, ditch, street, highway, avenue or alley within the meaning of this section; provided, that the city council may, in its discretion, where such lots to be charged are corner lots and are adjacent to the avenues and streets, and where the frontage exceeds twenty-five (25) feet along such avenue or street, apportion the amount specially assessed for any such improvement (chargeable under this act and section) to said corner lot and the lots adjacent to the middle of the block upon which they are located, said apportionment to be made so that the corner lot or the lot abutting the street or avenue improved, or along which the improvement is located, to pay not less than thirty-five (35) per cent of the total amount so levied, and the balance to be divided between the remaining lots

liable to assessment, as aforesaid, as they may deem just and equitable."

Sec. 11. "If in any case the city council shall deem that a part of the expense of doing any work provided for in this chapter should be borne by the city at large, they may, by a majority vote of all the councilmen elect, by resolution to be entered on the minutes of the proceedings, order that a part of the expense, not exceeding one-third ($\frac{1}{3}$), shall be paid from and out of the city treasury."

Other sections provide for levying and collecting the necessary special assessments. The city levied no special assessments for the improvements above mentioned, but all payments made on account thereof were made out of the city treasury from funds raised by general taxation. The Oliver Iron Mining Co., a large taxpayer in the city, brought a proceeding in *mandamus* to compel the city and its officers to assess the expense for making these improvements against the abutting property as required by the city charter. The same company also brought an action to enjoin the city and its officers from paying more than one-third of the cost of such improvements out of the city treasury. The defendants interposed an answer in the *mandamus* proceeding in which, in effect, they admitted that they had made the contracts for the improvements as stated; that they had made no assessments against abutting property to defray the cost thereof; that they had made payments upon such contracts out of the funds in the city treasury raised by general taxation, and intended to pay the remainder of the cost of such improvements out of such funds; and that the provisions of the charter were as above stated. But they alleged that the charter provision requiring the expense for such improvements to be assessed against the abutting property was unconstitutional and void. The court made findings setting forth the admitted facts, and directed that a peremptory writ of *mandamus* issue commanding defendants to levy, assess and collect from the property liable to special assessment therefor, under the provisions of the charter, not less than two-thirds of the cost of making the improvements in question. Defendants made a motion for a new trial and appealed from an order denying such motion.

In the injunction case, defendants interposed an answer similar to that in the *mandamus* proceeding, and, upon the admitted facts, the court rendered judgment enjoining defendants "from paying any sums whatsoever to D. H. Clough & Company or K. S. Johnson * * * on account of any work done or to be done * * * under their respective contracts with the city * * * except that upon a majority vote of all the councilmen elect of said village, by resolution entered on the minutes of the proceedings, it may be ordered that a part of the expense, not exceeding one-third, shall be paid from and out of the city treasury" of said city.

Defendants appealed from this judgment. Important questions presented apply equally to both cases and they were argued and submitted together.

The power to tax inheres in the state as an attribute of its sovereignty, and is not dependent upon a grant of power in the Constitution. Constitutional provisions relating to taxation are not grants of power, but limitations upon the exercise of a power necessarily possessed by every sovereign state. Except as restricted by such provisions, the power of the state to tax is unlimited. Drew v. Tifft, 79 Minn. 175, 81 N. W. 839, 47 L.R.A. 525, 79 Am. St. 446; State v. Robert P. Lewis Co. 72 Minn. 87, 75 N. W. 108, 42 L.R.A. 639; Id. 82 Minn. 390, 85 N. W. 207, 86 N. W. 611, 53 L.R.A. 421; 27 Am. & Eng. Enc. (2d ed.) 583. On the other hand, municipal corporations have no inherent power of taxation, and consequently possess only the power in respect thereto which has been granted to them by the Constitution or the statutes. Sewall v. City of St. Paul, 20 Minn. 459 (511); State v. District Court of Ramsey County, 44 Minn. 244, 46 N. W. 349; 27 Am. & Eng. Enc. (2d ed.) 869.

Special assessments for local improvements rest upon the theory that the property so assessed is specially benefited by the improvement, and a special assessment which exceeds the amount of such special benefit is, as to such excess, a taking of private property for public use without just compensation. 25 Am. & Eng. Enc. (2d ed.) 1172, and cases there cited; note in 14 L.R.A. 755; note appended

to Chicago, M. & St. P. Ry. Co. v. Janesville, 28 L.R.A. (N.S.) 1124, and especially subdivisions 11 and 12 thereof; State v. Brill, 58 Minn. 152, 59 N. W. 989; State v. Pillsbury, 82 Minn. 359, 85 N. W. 175.

When the charter of the city of Ely was adopted, the Constitution expressly provided that assessments might be made according to frontage. That provision was omitted when the Constitution was amended in 1906, and defendants urge that the frontage rule thereupon ceased to be permissible. As their attack upon the charter is based upon the Constitution as it now stands, we shall not discuss the force or effect of the provisions which have been superseded by the present provision; but it may be proper to remark that, in construing the present provision, we should have in mind that the purpose in adopting it was to lessen and not to increase the restrictions theretofore imposed upon the taxing power. The Constitution as now amended provides:

"Taxes shall be uniform upon the same class of subjects, and shall be levied and collected for public purposes, * * * provided, that the legislature may authorize municipal corporations to levy and collect assessments for local improvements upon property benefited thereby without regard to a cash valuation." Article 9, § 1.

The only limitation in respect to the manner or method of apportioning either taxes or assessments, imposed by this constitutional provision, is that they "shall be uniform upon the same class of subjects." It does not require that special assessments be laid in proportion to benefits or in proportion to a cash valuation, but merely that they "be uniform upon the same class of subjects." Defendants insist that their charter violates this requirement, and also the fundamental principle that special assessments may be levied only upon property specially benefited by the improvement. We think this contention not well founded; and that the charter, taken as a whole, need not be construed as imposing special assessments upon property not benefited by the improvement, nor as transgressing the rule that such assessments shall be uniform. It is to be borne in mind that the city intended to adopt a valid charter, and that the

rule which requires a statute to be so construed as not to infringe
constitutional inhibitions, if reasonably susceptible of such construc-
tion, is equally applicable to such charters.    The provisions of the
charter must be given a meaning which will bring them in harmony
with the fundamental law, unless it clearly appears that the com-
mands therein contained cannot be obeyed without violating such
fundamental law.    To justify declaring the charter provision void, it
is not enough that the language used might be construed as trans-
gressing the limitations imposed upon the legislative power, but it
must appear that the language cannot reasonably be construed so as
not to transgress such limitations.

The charter provides for a permanent improvement fund in which
shall be placed the proceeds of all permanent improvement bonds,
all taxes levied for such fund, and all sums raised "by special assess-
ments upon the property benefited;" and that such fund "shall be
used only for defraying the expenses of improvements as provided in
this charter."    Chapter 7, §§ 1 and 2.    The charter provides that
the expense for constructing sidewalks shall be assessed against the
abutting property.    Chapter 9, §§ 8 and 9.    Also that the expense
for constructing other street improvements, and for constructing
sewers, shall be assessed upon the property abutting thereon in pro-
portion to frontage.    Chapter 9, §§ 5 and 6.

The legislature, and this charter takes the place of a legislative
enactment, may apportion special assessments according to any
method it deems proper, subject only to the requirement that such
assessments be uniform upon the same class of property, that they be
confined to property specially benefited by the improvement, and
that they do not exceed such special benefits.    Other restrictions,
formerly in force, are not imposed by the Constitution as now amend-
ed.    That the law-making power may determine that the expense for
constructing sewers and street improvements shall be apportioned to
the property abutting thereon according to the frontage rule, without
violating any of the above limitations, has been considered and de-
termined by the courts so many times that an extended discussion of
the proposition is unnecessary.    See the exhaustive notes appended

to the case of Chicago, M. & St. P. Ry. Co. v. Janesville, 28 L.R.A.
(N.S.) 1124, and to the case of Heavner v. Elkins, 26 Ann. Cas.
1913A, 653, in both of which the authorities are collated and an-
alyzed; also State v. Reis, 38 Minn. 371, 38 N. W. 97; State v.
District Court of St. Louis County, 61 Minn. 542, 64 N. W. 190;
State v. Robert P. Lewis Co. 72 Minn. 87, 75 N. W. 108, 42 L.R.A.
639; State v. District Court of Ramsey County, 80 Minn. 293, 83
N. W. 183. It has become firmly established that the law-making
power may determine by statutory enactment that property abutting
upon such improvements is specially benefited thereby, and that the
frontage rule is a practicable and reasonably accurate method of ap-
portioning such benefits. This is based upon the theory that the leg-
islative body (in the present case the voters), have considered all
the facts bearing upon the question, and have reached the conclusion
that such property is specially benefited to the extent of the assess-
ment and in proportion to frontage, and have embodied their deter-
mination and judgment in the legislative act. Such legislative judg-
ment is presumed to be correct and in accordance with the facts
until the contrary is clearly shown.

Defendants contend that the proviso in respect to corner lots found
in section 5 of chapter 9 of the charter violates the uniformity rule.
This proviso, as it reads, is not clear, and, to make it intelligible, it
must be interpreted in the light of the situation to which it was in-
tended to apply, and of the purpose sought to be accomplished. The
plat of the city shows that the streets cross the avenues at right
angles; that, except where they adjoin a boundary line of the
property platted, the lots are 25 feet in width; that corner lots
abutting upon both a street and an. avenue have a frontage of 25
feet or less upon the one, and usually of about 125 feet upon the
other; and that in one block there are corner lots extending length-
wise along the streets, while in all other blocks the corner lots extend
lengthwise along the avenues. If both the street and avenue were
improved, the burden imposed upon a corner lot by the front foot
rule would be several times that imposed upon an inside lot. To
provide for obviating such inequality, the proviso authorizes the

council, in cases where the improvement extends along a corner lot for more than 25 feet, to apportion a part of the cost thereof, upon the inside lots lying between such corner lot and the middle line of the block. Defendants apparently concede that the burden should be equalized, but insist that restricting the power to make such apportionment to cases in which the frontage upon the improvement exceeds 25 feet is an arbitrary classification forbidden by the uniformity rule. In view of the manner in which the city is platted, the practical effect of this provision is to permit such apportionment where the improvement extends along the lot lengthwise, but not where it extends across the end of the lot. We think there is sufficient difference in the two situations to justify different methods of apportionment. Defendants also insist that the uniformity rule is violated because, owing to the varying size of the blocks, the number of inside lots to which the assessment may be extended may vary in different localities. If the council conclude that a part of the assessment should be levied upon the inside lots, the apportionment thereof is to be made as they "may deem just and equitable," and it must be assumed, until the contrary appears, that they will not violate the rule of uniformity. But if the proviso were to be held void, either for uncertainty or as violating the uniformity rule, it would not invalidate the remainder of the section. The remainder of the section could still stand, although, with the proviso eliminated, it would require special assessments to be levied upon corner lots according to the frontage rule, whether the lot abutted upon the improvement endwise or lengthwise. That such a statute is valid is well settled. See Youngstown v. Fishel, (Ohio) 104 N. E. 141, 50 L.R.A.(N.S.) 921, and cases cited in note appended thereto.

Defendants' contention that the frontage rule violates the Fourteenth amendment to the Federal Constitution has been decided against them by the Supreme Court of the United States. In Louisville & Nashville R. Co. v. Barber Asphalt Paving Co. 197 U. S. 430, 49 L. ed. 819, the court say:

"It will be noticed that the case concerns only grading, curbing and paving, and what we shall have to say is confined to a case of

129 M.—4.

that sort. * * * The law provides in the case of original construction, such as this improvement was, that it shall be made at the exclusive cost of the adjoining owners, to be equally apportioned according to the number of feet owned by them. * * * It now is established beyond permissible controversy that laws like the one before us are not contrary to the Constitution of the United States." In support of this proposition the court cites the following decisions: Walston v. Nevin, 128 U. S. 578, 32 L. ed. 544, 9 Sup. Ct. 192, 32 L. ed. 544; French v. Barber Asphalt Paving Co. 181 U. S. 324, 21 Sup. Ct. 625, 45 L. ed. 879; Webster v. Fargo, 181 U. S. 394, 21 Sup. Ct. 623, 45 L. ed. 912; Cass Farm Co. v. Detroit, 181 U. S. 396, 21 Sup. Ct. 644, 45 L. ed. 914; Detroit v. Parker, 181 U. S. 399, 21 Sup. Ct. 624, 45 L. ed. 917; Chadwick v. Kelley, 187 U. S. 540, 543, 544, 23 Sup. Ct. 175, 47 L. ed. 293, 295; Schaefer v. Werling, 188 U. S. 516, 23 Sup. Ct. 449, 47 L. ed. 570; Seattle v. Kelleher, 195 U. S. 351, 358, 25 Sup. Ct. 44, 49 L. ed. 232. The apportionment there under consideration was according to the area of the abutting property, but, as shown by the cases cited, an apportionment according to frontage is equally within the rule. See Seattle v. Kelleher, 195 U. S. 351, 25 Sup. Ct. 44, 49 L. ed. 232; also Heavner v. Elkins, 69 W. Va. 255, 71 S. E. 184, 52 L.R.A.(N.S.) 1035, 26 Ann. Cas. 1913A, 653, and note.

We have reached the conclusion that the charter violates neither our own Constitution, nor the Fourteenth amendment to the Federal Constitution.

The city had express authority to contract for the construction of the improvements in question. It contracted for the construction of such improvements, and agreed to pay instalments of the contract price upon monthly estimates as the work progressed, and to pay the entire remainder of such contract price within 30 days after the final estimate. The contractors, promptly and in a proper manner, proceeded to perform the respective contracts upon their part, and the city must also perform upon its part, unless it has attempted to assume obligations not permissible under the law.

The charter provides that there shall be a general fund "in which all revenues of the city shall be placed, except such as are directed to be placed in some other fund"; that "the general fund may be used for any lawful city purpose, and any money may be transferred therefrom to other funds by the city council;" that the council may make temporary loans from any fund, having money not needed for use therein, to any other fund except the general fund; and that, when authorized by a majority vote at any general or special election, bonds may be issued for the benefit of any fund, in any amount which will not increase the total bonded indebtedness beyond $70,000. The charter also provides that the city council shall receive bids for the construction of all local improvements involving the expenditure of more than $100, and shall enter into a written contract "for the performance of such work," with the person whose bid is accepted; but it nowhere requires the contract to provide that such work shall be paid for out of the proceeds of special assessments, or out of any particular fund. ·

The charter further provides that, after making a contract for a local improvement, the city council shall levy a special assessment, in accordance with the provisions of the charter, for the cost thereof; and that all such assessments, unless previously paid to the city treasurer, shall be certified to the county auditor, and be collected "in the same manner that state and county taxes are collected."

The charter contains no provision that payment for the construction of local improvements shall be made only from the proceeds of special assessments. Neither does it contain any provision that such payments shall be made only from the permanent improvement fund. On the contrary, it expressly provides that "the general fund may be used for any lawful city purpose." Unless the provision that "the expense of constructing" local improvements "shall be chargeable to the lots or parcels of land abutting" thereon, and shall be levied upon such abutting property, disabled the city from assuming a general and unlimited obligation to pay for such improvements, the city has assumed such general and unlimited obligation in the present case and is bound thereby. In this connection

it may be noted that the charter does not contemplate raising funds by special assessment before the work is performed, for the assessment is not to be made until after the contract has been let. In Cumming v. Mayor of Brooklyn, 11 Paige, 596, 600, it is said:

"There is nothing in the charter which prohibits the corporation from entering into general contracts for the making such improvements. It is true, the same section of the charter which authorizes these improvements to be made, directs the expense thereof to be assessed upon the owners and occupants of the lands and premises benefited thereby, in proportion to the amount of such benefit. * * * The assessment of the expense, as a local tax, is not however a restriction upon the power of the corporation so as to require it to contract only for payments out of that particular fund. But this local tax is a fund which has been provided by the legislature to reimburse the corporation for the expenses of an improvement which it has either paid or become liable to pay. And if the corporation, voluntarily, or by compulsion, pays such expenses out of its general funds, any citizen who pays taxes may apply to the proper tribunal to compel the corporation to cause the general fund to be reimbursed, by an assessment and collection of the expense of such improvement from the owners of the property benefited, or out of the property itself, as authorized and directed by the charter."

In Pine Tree Lumber Co. v. City of Fargo, 12 N. D. 360, 96 N. W. 357, it is said:

"As between the city and the parties with whom it contracted to furnish the labor and material and to pave its streets, the city had power to render itself generally liable, notwithstanding the cost of the improvement was to fall ultimately upon the owners of the abutting property. The scheme of the statute was to enable the city to make the improvements enumerated in the statute, and to reimburse itself for the costs of the same through special assessments of property abutting upon, and theoretically, at least, benefited, to the extent of the assessments, by the improvements made. * * * The liability of the property holders for these assessments is to the city exclusively. The assessments are levied and collected by the

city, and the money, when collected, comes into the city treasury. The contractor is not in privity with the property owners, and has no means of enforcing collection against them. He looks alone to the city. There is nothing in the statute which imposes upon the person to whom the contract is let to pave the streets the requirement to look alone to the proceeds of the special assessments for his pay, or limiting his recovery to the funds realized therefrom."

In City of Garden City v. Trigg, 57 Kan. 632, 47 Pac. 524, 525, it is said:

"While the statute provides for assessing the cost of the improvement against the property benefited, the city is not limited to that method of making payment." Also see the following: Hitchcock v. Galveston, 96 U. S. 341, 24 L. ed. 659; United States v. Fort Scott, 99 U. S. 152, 25 L. ed. 348; Fowler v. City of Superior, 85 Wis. 411, 425, 54 N. W. 800; City of Wyandotte v. Zeitz, 21 Kan. 649; Heller v. City of Garden City, 58 Kan. 263, 48 Pac. 841; State v. Commissioners, 37 Oh. St. 526; Argenti v. City of San Francisco, 16 Cal. 256; Ward v. Lincoln, 87 Neb. 661, 128 N. W. 24, 32 L.R.A. (N.S.) 163, and cases cited in note.

In Lovell v. City of St. Paul, 10 Minn. 229, (290), and in Keigher v. City of St. Paul, 69 Minn. 78, 72 N. W. 54, cited by plaintiff, the contractors were to receive their pay solely from the proceeds of special assessments. These and other cases, in which either the law or the contract required the contractor to look to a special fund for his pay, are not in point, for the reason that the charter of the city of Ely contains no such requirement, and the contracts entered into by the city, and which it had ample authority to make, imposed upon the city a general and unlimited obligation to pay.

Section 11, chapter 9, of the charter provides that the city council, in case they shall deem that a part of the cost of a local improvement should be borne by the city at large, may pay not exceeding one-third thereof out of the city treasury. It is apparent from the charter considered as a whole that it was not the purpose of this provision to limit the power of the city to make contracts, but merely to au-

thorize an apportionment of not more than one-third the cost of an improvement upon the city at large.

The charter provides that not less than two-thirds of the expense for local improvements shall be borne, ultimately, by the abutting property, and requires the city council to collect such expense from such property. The special assessments are to be imposed and enforced by the city, and, when collected, the proceeds go into the city treasury. The contractors are given no claim thereto, or lien thereon, and neither the charter nor the contracts require them to look to such assessments for their pay. The contractors deal with the city as a corporate entity possessing all the powers given by the charter. How the city shall provide the funds to meet its obligations is not the concern of the contractors. The charter nowhere limits the liability of the city upon its contracts to the money in any particular fund, or to the funds raised in any particular manner. The city is given ample power to provide funds before the assessments are collected. It may make temporary loans to the permanent improvement fund from any other fund having money not needed for immediate use therein; it may use the general fund; and, if need be, it may issue bonds. As between the general taxpayers and the property specially benefited, the general taxpayers have the right to require the city to make and collect the special assessments provided for, to the end that the burden for local improvements shall be borne ultimately by such specially benefited property and not by the general taxpayers; but they have not the right to enjoin the city from meeting its contractual obligations out of any funds which may be available therefor.

The result is that the decision of the trial court directing the issuance of a peremptory writ of *mandamus* was correct; but that the judgment enjoining defendants from making payments as required by the contracts entered into by the city was erroneous. In the *mandamus* proceeding, the order appealed from is affirmed; in the injunction proceeding, the judgment appealed from is reversed.