WILLIAM NOONAN *vs.* CITY OF STILLWATER and another.

February 12, 1885.

Constitutional Law—Municipal Corporation—Defective Sidewalks—
Liability of Property Owner.—The charter of the city of Stillwater pro-
vides that it shall be the duty of all owners of land adjoining any street,
lane, or alley in said city "to construct, reconstruct, and maintain in good
repair such sidewalks along the side of the street, lane, or alley next to the
lands of such owner, respectively, as may have been heretofore con-
structed, or shall hereafter be constructed or directed by the city council
to be built;" and it also provides that "such owners shall be liable for
all damages, to whomsoever resulting, from their default or evident neg-
lect in not keeping such sidewalk in good repair, and in safe, passable
condition." *Held*, that this latter provision, so far as it assumes to make
the owners liable to others than the city, is unconstitutional.

Plaintiff, who was injured by a fall occasioned by a defective side-
walk in the city of Stillwater, brought this action for damages in the
district court for Washington county against the city and one Isaac
Gray, who is the owner of the lot abutting upon the defective side-
walk. The defendants separately demurred to the complaint, and
the plaintiff appeals from an order by *McCluer*, J., sustaining the de-
murrer of defendant Gray, and the defendant the city of Stillwater
appeals from an order overruling its demurrer.

*J. N. Searles*, for plaintiff.

The provision of the city charter, imposing a liability upon the ad-
joining land owner, is valid. Burroughs on Taxation, 494; Cooley on
Taxation, 398; Cooley, Const. Lim. 734; Dillon, Mun. Corp. § 637;
*Cone* v. *City of Hartford*, 28 Conn. 363; *Hydes* v. *Joyes*, 4 Bush. (Ky.)
464; *Goddard, Petitioner*, 16 Pick. 504; *City of Lowell* v. *Hadley*, 8
Met. 180; *City of Boston* v. *Shaw*, 1 Met. 130; *Hildreth* v. *City of
Lowell*, 11 Gray, 345; *Woodbridge* v. *City of Detroit*, 8 Mich. 274,
306; *State* v. *Jersey City*, 29 N. J. Law, 441; *Paxon* v. *Sweet*, 13 N.
J. Law, 196; *Hart* v. *City of Brooklyn*, 36 Barb. 226; *Bonsall* v.
*Mayor*, 19 Ohio, 418; *City of Philadelphia* v. *Tyron*, 35 Pa. St. 401;
*Matter of Dorrance St.*, 4 R. I. 230; *Deblois* v. *Barker*, 4 R. I. 445;

*Washington* v. *Mayor*, 1 Swan, 177; *Mayor* v. *Maberry*, 6 Humph. 868.

A. E. *Macartney*, for the City of Stillwater.

*Fayette Marsh*, for defendant Gray.

The attempt to impose a liability upon private individuals is unconstitutional and invalid. *Gatch* v. *City of Des Moines*, 3 Am. & Eng. Corp. Cas. 622; *Stuart* v. *Palmer*, 74 N. Y. 183; *County of San Mateo* v. *South. Pac. R. Co.*, 8 Am. & Eng. R. Cas. 1; *Burlington & M. R. Co.* v. *Schluntz*, 14 Am. & Eng. R. Cas. 182; *Thomas* v. *Gain*, 35 Mich. 155; *City of Philadelphia* v. *Miller*, 49 Pa. St. 440; *Barnes* v. *Hazelton*, 50 Ill. 429; *Reis* v. *Graff*, 51 Cal. 86.

GILFILLAN, C. J.   The charter of the city of Stillwater (Sp. Laws 1881, *c.* 92, *subc.* 8, § 13, p. 571) makes it "the duty of all owners of land adjoining any street, lane, or alley in said city to construct, reconstruct, and maintain in good repair such sidewalks along the side of the street, lane, or alley next to the lands of such owner, respectively, as may have been heretofore constructed, or as shall hereafter be constructed or directed by the city council to be built, and of such material and width, and upon such place and grade, as the city council may by ordinance or otherwise prescribe." It also provides that such owners shall be liable for all damages, to whomsoever resulting, from their fault or evident neglect in not keeping any such sidewalk in good repair, and in safe, passable condition; and that no action shall be maintained against the city by any person injured through a defect in any sidewalk, unless the owner of the land along which such sidewalk is defective is joined as a defendant; and that, in case of judgment against the defendants, execution shall first issue against the defendant owning the land.

The plaintiff, having been injured through defects in a sidewalk upon a public street in the city opposite a lot owned by the defendant Gray, brings this action. The complaint alleges that the sidewalk was constructed by the city, but in such a way as to be defective and unsafe, and that it is rendered more unsafe by reason of water from natural springs on Gray's lot flowing upon and across and forming ice on it. Each of the defendants demurred to the complaint. The demurrer of the city was overruled; that of Gray, sustained. The

city appeals from the order overruling its demurrer; the plaintiff, from that sustaining the demurrer of Gray.

We can see no reason to question the liability of the city. The charter devolves upon it the custody of, and power and control over, streets usually devolved upon city corporations. This creates the duty to keep the same in repair when opened by the city for travel, and the liability for injuries caused by neglect of that duty. *City of St. Paul* v. *Seitz,* 3 Minn. 205, (297;) *Shartle* v. *City of Minneapolis,* 17 Minn. 284, (308;) *Lindholm* v. *City of St. Paul,* 19 Minn. 204, (245;) *Moore* v. *City of Minneapolis,* Id. 258, (300.) For this purpose a sidewalk is a part of the street. *Furnell* v. *City of St. Paul,* 20 Minn. 101, (117.) The demurrer of the city was therefore properly overruled.

The demurrer of the defendant Gray presents questions of greater difficulty. Can the legislature make it the duty of lot-owners in cities to construct and keep in repair so much of the street to the centre of it as lies in front of the lots, and, upon their failure so to do, make them liable, not to the city, but to any one of the public who may be injured in consequence of the neglect to construct or keep in repair? Some cases attempt to make a distinction between the sidewalk and the remainder of the street in respect to the method of laying the burden of constructing and maintaining the same. But there is no basis for such a distinction. The sidewalk and the remainder of the street are equally for public use,—the rights of the public are the same in each. The rights, as far as the centre of the street, of the owner of an abutting lot are the same in each. That one is reserved for passers on foot, and the other is for the use of vehicles, is only a regulation of the public use for the public good, the public authorities determining how much shall be reserved for sidewalk. The improvement of one is just as much a public improvement, and must have the public need to justify it to the same extent, as the improvement of the other; therefore, if the provisions of this charter as to sidewalks are valid, the legislature may extend them over the remainder of the street,—certainly, to the centre.

. The provisions are clearly an attempt to charge upon the property the cost of a public improvement. Making it the duty of the lot

owner, as between him and the city, to construct and keep the side-walk in repair in front of the lot, the city having the right in case of his default to do the work itself and charge the cost to the lot, does not differ essentially, so far as the principles of taxation for local improvements are concerned, from authorizing the city, and making it its duty, in the first instance to do the work, and levy on the lot the expense of so much of it as lies in front of it. Whether that is a proper method under our constitution of apportioning the expense of local improvements to the property chargeable,—that is, whether the expense of a street may be apportioned by charging to each lot the expense of so much of the street to the centre as lies in front of it,—is the first question to be considered. Whether it is competent for the legislature to impose upon the owner of the lot the liability to third persons attempted in this charter is another question, to be considered after the other.

Upon this first question very little aid is to be got from decisions in other states. As affecting the proper basis or method of apportionment in cases of local improvement, the constitutions of the several states differ materially. Each court interprets the constitution of its own state, and decides cases involving the question according to its interpretation. We are not now embarrassed by the question that has vexed many courts, whether the power to impose on property the cost of making and repairing streets is to be referred to the taxing power, the police power, or some other sovereign power. In *McComb* v. *Bell.* 2 Minn. 256, (295,) this court held it to belong to the taxing power, and this was reaffirmed and applied in *Stinson* v. *Smith*, 8 Minn. 326, (366.) The first question is, therefore, is there in the constitution any limitation or restriction of that power that will prevent the legislature from imposing the cost of such improvements, or the duty as between lot-owners and the city to make them, in the manner provided in this charter?

The only part of the constitution which can be claimed to have that effect is section 1, article 9. Originally that section read: "All taxes to be raised in this state shall be as nearly equal as may be; and all property on which taxes are to be levied shall have a cash valuation, and be equalized and uniform throughout the state." This

laid down the rule that taxes should be equal, and that, for the purpose of levying them and preserving equality, the cash valuation of the property to be taxed should be taken as a basis. In *Stinson* v. *Smith, supra,* the court decided that the levying of assessments for local improvements came within the rule, and held void an act which authorized such an assessment to be levied on the property benefited in proportion to the benefits resulting thereto, instead of in proportion to a cash valuation. After the decision in that case section 1 was amended by adding: "*Provided,* that the legislature may, by general law or special act, authorize municipal corporations to levy assessments for local improvements upon the property fronting upon such improvements, or upon the property to be benefited by such improvements, without regard to a cash valuation, *and in such manner as the legislature may prescribe.*"

It is not to be supposed that in adopting this amendment the people intended to reject or modify, in respect to taxes of this class, so just and reasonable a principle as that they "shall be as nearly equal as may be,"—a principle without which the attempt to tax might become practically confiscation. It must be taken, therefore, that whatever basis of apportionment may be adopted, it must include the idea of equality. The amendment does not lay down any rule or basis of apportionment. It points out what property may be included in what may be termed the assessment or taxing district, to wit, "the property fronting upon such improvement," or "the property to be benefited by such improvement." But it permits the legislature to adopt some other consideration than the cash valuation, in determining how the cost of local improvements shall be apportioned upon the property within the assessment district. Experience had shown that while, for the purpose of general taxation, value is the fairest basis for apportionment, it may not be so for the purpose of paying the cost of local improvements. Thus, of two lots equally benefited by the improvement, one might, by reason of buildings or other improvements upon it, be worth many times as much as the other, and, on the basis of valuation, be taxed for many times as much. This, if the special benefit conferred is to be considered, would result in inequality. This, we have no doubt, was the reason for rejecting

valuation as the sole constitutional basis for taxing in such cases, and it seems to have been thought that any general method of apportionment prescribed in the constitution might not work well in all cases, and for that reason it was better to leave the apportionment to be made "in such manner as the legislature may prescribe."

There is no reason, therefore, why the duty and cost of making improvements shall not be imposed in the manner provided in this charter, unless it has the vice of inequality, so that the court must say that the constitutional principle of equality has been violated. And when we speak of equality under a rule for taxation, it must not be understood that absolute mathematical equality, in its operation upon all persons or property, is required. No general rule ever was or can be devised for levying taxes, whatever their kind, that might not in exceptional instances operate unequally. To condemn the rule, it is not enough that under it there may be such cases. If it be one which will generally, and unless with accidental exceptions, apportion the burden justly, or with such approximate justice as is usually attainable in tax cases, it must be sustained. Applying this as the test, we do not see how the provision in the charter violates in this respect the constitutional requirement. It may in some instances impose more of the general burden upon one than upon another. So might any other rule of apportionment that could be adopted for such cases. We cannot see that, as a general rule, this will apportion the burden less equally than any other.

The provision of this charter, imposing upon owners of lots a liability to third persons, can hardly be supposed to be for the purpose of putting such owners in the place of the municipal corporation in respect to its control over and care of public streets, its duty, governmental in its character, to the public in that behalf, and its liabilities consequent upon a default in that duty. The owners have no power to regulate the use by others of the sidewalks, nor do they determine where, when, or how sidewalks shall be laid. If the council does not direct sidewalks to be laid, or directs them to be constructed in an improper manner or on an improper grade, of improper materials, or of an insufficient width, they are in no way responsible. The liability is not imposed on all owners alike, but only on those who neglect to

construct sidewalks when directed by the council, or to keep them in repair after they are constructed, and only because of such neglect. If it were an attempt to impose on private persons duties that inhere in the public in their organized, municipal, governmental capacity, it would certainly be an anomaly in legislation. But the liability is rather in the nature of a penalty to enforce performance of a duty imposed as a tax, just as a direct pecuniary penalty is very generally provided to enforce payment of necessary assessments for local improvements.

Treating the imposition upon lot-owners of the duty to construct and maintain sidewalks as a mode of apportioning to the property its share of the common burden, as a mode of taxation,—and it can be sustained on no other theory,—and the liability as a penalty to enforce what is, in effect, a tax, we are brought to the question of how, or, rather, upon what property, the tax may be made a burden, and against what property it may, with the penalties, be enforced; for the penalty, being but an incident to the tax, must be subject to the same qualifications as the tax itself. Thus the rule of uniformity must be observed with respect to the penalty as well as with respect to the tax. Also, if enforcement of the tax must be limited to particular property, enforcement of the penalty must be subject to the same limitation. It would be absurd to say that a tax could be enforced only against a particular lot on which it is a burden, but that the penalty for non-payment of it might be enforced against any other property of the owner. A tax imposed like this, without regard to a cash valuation, cannot be sustained by the general clause of the section of the constitution we have referred to. It must find its support in the proviso, and can be imposed only as therein provided. That empowers the legislature to authorize the levy of assessments for local improvements, without regard to a cash valuation, "upon the *property* fronting upon such improvements, or upon the *property* benefited by such improvements." It specifies the particular property or class of property upon which the burden may be laid, as well as the purpose for which it may be laid, and thus excludes the power to lay it, without regard to a cash valuation, for any other purpose or upon any other property of the owner, or upon the owner gener-

ally, so as to make it a personal obligation which may be enforced, by a personal action, against his property generally.   This is in accordance with the general theory of taxation, that the property which is to be benefited by the disbursement of the tax should pay it.   It is especially the theory of assessments for local improvements. Where a public improvement is in its character local, it is assumed, and correctly, that although it may be a general incidental benefit to the whole public, it is a direct, special, and peculiar benefit to property fronting on it, or in its vicinity, and therefore that property ought to pay for it.   What we have said of the power to impose on owners of lots the duty to construct and maintain sidewalks must be understood as of a duty with respect to the particular property, to be enforced, not against the owner personally, but against the property.

The liability provided in the charter is one which subjects the owner to a personal action, and, for the reasons we have stated, it cannot be sustained.   The duty to construct and maintain sidewalks, being in the nature of a tax, is one that is owing only to the city; just as the duty to pay taxes for local improvements imposed in any other way. It is not, and from its very nature cannot be, a duty owing to third persons.   In this respect it differs from certain police regulations intended for the protection of each one of the public, such as laws regulating the speed of railroad trains, prohibiting fast driving of horses in the streets, and the like.   Now, whether it is competent for the legislature to make one liable to private persons for failure in the duty to pay taxes of any kind to the state or municipal corporations, is a very grave question.   But I think this case does not call for its decision.

Both orders appealed from are affirmed.

BERRY, J.   While agreeing to the final disposition made of this case, and that the proviso quoted from the constitution does not authorize the legislature to impose upon the owner of abutting property a liability to persons injured through defects in a sidewalk, I prefer to rest my objection to any such imposition upon the ground that it would be an attempt to shift upon the property-owner—a private person—a liability for the failure of the public authorities to perform a

governmental duty.    While the expense of constructing and maintaining a sidewalk may be imposed upon the property-owner by giving him the option to build and maintain it, or by taxing him for the cost of so doing, this is as far, as it seems to me, as his liability can go.

MITCHELL, J.   I am also of opinion that the amendment to section 1 of article 9 of the constitution does not authorize the legislature to impose upon the owner of abutting property this liability to persons injured through failure to repair a defective sidewalk; but I rest my opinion substantially upon the grounds stated by my brother BERRY.   Ordinances requiring a person to build or keep in repair sidewalks abutting his property are an exercise of the *taxing*, and not of the *police,* power.   Hence the duty imposed by them is one due the city as a municipal body, and not to the public as composed of individuals.   The work enforced under them relieves, to the extent of its cost and value, the city from the charges which otherwise it would be necessarily subjected to in the discharge of its municipal duty of keeping all duly-established streets in good repair, so that they may be safe and convenient for persons using them.   To this end the cost of constructing and maintaining the sidewalks may be imposed as a tax upon the property-owner; and it is immaterial whether this is done by the city doing the work in the first instance, or by first requiring the property-owner to do it, and then, on his failure to do it, causing it to be done, and charging the cost against the property.

But the city is in no degree exonerated by this from its obligation to perform its governmental duty of keeping the public streets in safe condition.   In my judgment, the power to levy assessments for local improvements does not authorize the imposition upon a property-owner, as a penalty for non-payment of his tax or assessment, (for that is what his failure to construct or repair amounts to,) the liability of guarantor to the public of the safety of the street, or of indemnitor of the city against liability for its neglect of its own municipal duty.   This would practically amount to shifting upon private persons the governmental duty which the city owes the public, and compelling every man who owns a lot in a city to turn himself into a street

supervisor. I do not think the constitutional provision referred to authorizes the imposition of any such liability either upon a person or his property.

The distinction between this case and one where a person has committed a nuisance in a street, or where he has failed to comply with the requirements of an ordinance enacted in the exercise of the *police* power, designed for the safety of the public, and imposing a duty due, not to the city as a municipal body, but to the public as individuals, is too apparent to require more than a reference to it.