## MARY FABRICATOR
### vs .
## ETHEL SALOVITZ

Superior Court        New Haven County        File #54785

MEMORANDUM FILED JULY 26, 1938.

FitzGerald, Foote & FitzGerald, of New Haven, for the Plaintiff.

Watrous, Hewitt, Gumbart & Corbin, of New Haven, for the Defendant.

McEVOY, J.   In this action the plaintiff seeks to recover damages from the defendant, an owner of land abutting a side-walk in the City of New Haven, because the plaintiff slipped, fell and was injured by reason of the failure of the defendant owner to "keep the sidewalk free of ice and snow or to other-wise make the sidewalk reasonably safe for use of persons law-fully there by spreading sand, ashes, cinders, gravel or other abrasive material there."

The complaint is based upon the last paragraph of section 1 and the whole of section 2, as amended in Special Acts of 1937, No. 576.

In the last paragraph of section 1 it is provided that:   "No action claiming damage to person or property under said sec-tions shall be maintained against the city of New Haven for defective sidewalks caused by snow and ice."

The present section 2 of this act is the amended section 3 of the 1935 Special Act and provides as follows:   "The duty of keeping sidewalks in said city free from snow and ice shall be upon the adjoining property owner and, for any injuries sustained as a result of a breach of this duty, the owner shall be liable in damages to the person or persons so injured.   The person or persons so injured by reason of the breach of duty on the part of the property owner to keep such sidewalk free from snow and ice shall give written notice to the property owner of such injury and a general description of the same and the cause thereof and the time and place of its occurrence, within ten days thereafter."

In paragraph 7 of the complaint it is alleged that the defend-ant, her agents, servants and employees were negligent in that she or they failed to keep the sidewalk free of ice and snow or to otherwise make the sidewalk reasonably safe for the use of persons lawfully thereon by spreading sand, ashes, cinders, gravel or other abrasive materials thereon.

It should be observed that, while section 1 of said Special Act No. 576 places the duty of keeping the sidewalks free from

snow and ice upon the "adjoining" property owner, yet the complaint makes no reference to the "adjoining" property owner but refers to the defendant as the owner of premises "in front."

Counsel have apparently treated this allegation as synonymous with "adjoining" and that point is not raised by the demurrer so that it will not be discussed.

The demurrer contains two paragraphs. The first is, substantially, that the complaint does not allege that the defendant caused the dangerous and defective condition, nor that the defendant placed or caused to be placed on the sidewalk the snow and ice, nor that the defendant caused the slippery, uneven or defective, dangerous condition.

The second paragraph attacks the constitutionality of the section upon which the plaintiff counts for three reasons: (1) That it is in violation of Article First of the Constitution of the State of Connecticut and particularly sections 1 and 12 thereof; and

(2) That it is in violation of the Fourteenth Amendment to the Constitution of the United States; and

(3) That it is unreasonable, arbitrary, discriminatory and void.

In her brief the defendant cites *City of New London vs. Miller*, 60 Conn. 112, 116, as authority for the claim that "the sovereign power invoked by statute and ordinances levying assessments for the construction and maintenance of highways and streets is a taxing power."

At page 116 of that case our Supreme Court said that: "Taxes are the regular, uniform and equal contributions which all citizens are required to make for the support of the government. An assessment for benefits may lack each of these qualities and yet be valid. . . . It is . . . uniform only in that it is supposed to give an added value to the property of each person assessed to the full amount of the assessment. But it has one requirement in common with every kind of taxation—that the assessment must be made against the very person whose property is benefited."

This definition would seem to remove this private act from the category of either a tax or an assessment, because it does not purport to benefit the property which is affected by the attempted statutory imposition of liability.

In 1881, in *City of Hartford vs. Talcott*, 48 Conn. 525, our Supreme Court carefully considered the question as to whether or not the imposition of a statutory penalty for failure to comply with an ordinance requiring either the removal of snow and ice or preventitive steps guarding injury due to its presence might be considered as conferring a right of action on persons injured by reason of the failure of the abutting owner to comply with the statutory requirements.

It is important to observe that in that case the action was brought upon an ordinance and that the ordinance prohibited the owner of a lot adjoining the street from allowing ice to remain on the sidewalk uncovered by sand or other suitable substance. It was further provided that "the owner or owners . . . of any building or lot of land bordering on any street . . . shall cause to be removed therefrom any and all snow, sleet and ice, within two hours after the same shall have fallen . . . or within three hours after sunrise, when the same shall have fallen in the night season."

In another section of that ordinance a penalty was imposed for failure to remove snow and ice "for the space of one hour during the day time."

In that case a traveler upon the highway, who was injured, brought an action against the city and recovered damages and then the city brought an action against the property owner for the amount which it was required to pay and claimed that, by reason of the enactment of the ordinance, upon the statutory authority to do so, the city was absolved from liability to any person injured and that liability was transferred to the property owner.

At page 532 of that case our Supreme Court said: "As both the carriage and foot-ways are for the convenience of the public and not for the especial use or benefit of adjoining proprietors under the general law, the money expended in maintaining, and in making compensation for injuries resulting from neglect to maintain them, is to be paid by the public from taxes assessed equally upon all property. The ownership of land upon a way does not carry with it the burden of an unequal contribution to either branch of these expenditures. The individual owes no duty to the public in reference to the way except to remove therefrom all property of his own which obstructs it, and to refrain from doing or plac-

ing anything thereon dangerous to the traveler. So far as defects in it result wholly from the operations of nature, the proprietor at whose front they exist is without responsibility for them. Therefore, where ice has accumulated upon the sidewalk to a dangerous extent it is the duty of the municipality to remove or cover it within a reasonable time after its formation."

And further, at page 533: "But there is in this language no grant of power to the council to change the general law and transfer the responsibility for injuries resulting from defects in the way from the public to an individual who is not responsible for their existence. The utmost reach of it is only to authorize the enactment of an ordinance requiring each proprietor upon the way to assist the city in restoring the walk to a condition of safety, with a fixed and reasonable penalty for disobedience."

And at page 534: "But, by passing this ordinance the city has not relieved itself from responsibility for the safety of travelers; it remains answerable for injuries resulting either from the negligence of the individual or its own omission to act. . . . Moreover, there not being upon the individual any liability at common law for injuries resulting from obstructions in the way wholly the effects of natural causes, such liability is not brought into existence by force of declarations in the ordinance that the obstructions are nuisances, or that it is his duty to remove them; for, as the liability is the creation of the ordinance, it can be no greater than that specifically named therein; and as, in the one before us, the council measured it by a fine with cost of removal, the city has thereby barred itself from enforcing an unnamed and unlimited liability beyond. In the matter of statutory penalties the expression of a certainty prevents the existence of an uncertainty."

In that case it was held that the owner of property "bordering" sidewalks was not responsible in damages to the person injured by reason of the existence of snow and ice upon that sidewalk, but that the liability inhered in and remained upon the city.

In *State vs. Carpenter*, 60 Conn. 97, at page 104, our Supreme Court said: "There must be a limitation somewhere, either in the statute authorizing the ordinance, or in the charter, or in the ordinance itself, and if in the last the courts will determine whether the amount is reasonable or not. But

if fixed in either of these ways and found reasonable in amount it will be valid."

In *Stevens vs. Neligon*, 116 Conn. 307, a traveler upon a highway brought an action against a property owner claiming damages by reason of the failure of the defendant to remove the snow and ice from the sidewalk or otherwise make it safe for transportation. The action was, apparently, based upon the provisions of a special act affecting the City of Meriden, which provided that "any person who shall cause any defect in or place or cause to be placed any obstruction on any of the streets of the city of Meriden" shall be answerable for any damages resulting from such action. A demurrer was filed to the complaint and it was sustained.

In that case the complaint alleged that the sidewalk was defective in that the flagstones upon it were not even, one being raised above the other, and also that the walk contained a structural defect "rendering it more dangerous by reason of the accumulation of snow and ice."

The demurrer alleged substantially that the complaint did not allege that the sidewalk was under the jurisdiction of the defendant or under his control and that it was the primary duty of the city to keep it reasonably safe for travel and that this duty could not be delegated to or imposed upon the defendant owner.

At page 309 of that case our Supreme Court said: "The State places upon the municipality the burden of keeping its highways in a reasonable safe condition for public travel, and this duty it cannot impose upon the property owner by contract or ordinance."

And further, at pages 309, 310: "When the abutting property owner has not by his own act created a condition upon the highway dangerous to the traveler, he is not responsible where, by reason of the failure of the city to perform its duty, it has become unsafe for public travel."

The complaint, in that case, specifically alleged that: "The plaintiff's fall was due either, on the one hand, to structural defects or improper construction of the walk by order of the city or because the city allowed it to remain in a defective condition, or, on the other hand, to the failure of the defendant Neligon to remove the snow and ice from the sidewalk or otherwise make it safe for travel." (p. 311.)

Of course, it there appeared that there was an allegation of the responsibility on the part of the city for its failure to act. The attempt was to hold both the city and the defend' ant property owner. The plaintiff argued in that case that: "A condition can be caused by negligence as well as by active conduct, that negligence is the failure to perform a duty owed to someone, that by virtue of the city ordinance Neligon owed him a duty to remove or sand the ice and snow, and that because of his failure to do so he may be said to have caused the defect in the walk." (p. 311.)

At page 312 of that case the Supreme Court further said: "It is true that an existing condition may sometimes be said to be caused by one who did not create it but permitted it to continue, though he was under no duty to remove it."

That case simply went so far as to hold that the legislature had not used apt words to cast upon the property owner the duty claimed to have existed by the plaintiff, and that determ' ination was expressed in these words: "If it had been the intention of the legislature to cast upon property owners in Meriden the primary duty of keeping the streets reasonably safe, which would include the duty to remedy a defect, such as a dangerous condition caused by snow or ice, for the crea' tion of which they were not responsible, it doubtless would have found apt words to create such a duty." (p. 312.)

At page 313, in commenting upon other charter provisions, our Supreme Court said: "The Waterbury charter has con' tained a similar provision since 1895 . . . and we are not aware of any case in which it has been claimed that they im' posed any liability on the property owner for failure to re' move snow or ice from the sidewalk, though actions have been brought seeking to hold the property owner by reason of obstructions or defects claimed to have been created by him in the streets of those cities. . . . Apart from these charter provisions, an abutting owner is liable in damages for an in' jury resulting from a nuisance created by him in the highway which renders it unsafe for public travel."

In *Wladyka vs. City of Waterbury*, 98 Conn. 305, at page 309, our Supreme Court said: "No cause of action can arise in Waterbury, due to ice and snow (only) on any of its side' walks, because of this provision of its charter. The only cause of action in which snow and ice upon a sidewalk of Waterbury can have any part in furnishing a cause of action,

is that provided by this charter provision,—one in which there is a structural defect in the sidewalk, and this structural defect has been rendered more dangerous by reason of snow and ice upon the walk at this point. Under this section neither the structural defect alone, nor the snow and ice alone, can create a cause of action, but when the structural defect exists and is made more dangerous by snow and ice upon the walk, the structural defect and the snow and ice in combination may create a cause of action provided the other factors are present."

In the recent case of *Willoughby vs. New Haven,* 123 Conn. 446, 197 Atl. 85, action was brought against the City of New Haven and against the property owner and reliance was had upon the same charter provision which is invoked in the instant case. At page 451 of that case our Supreme Court said: "At common law there is no liability upon an abutting property owner for injuries resulting from the effects of natural causes upon streets or sidewalks such as the accumulation of snow or ice. Primarily it is the sole duty of the municipality to keep its streets in reasonably safe condition for travel, and not the duty of private persons." And quoting from *City of Hartford vs. Talcott, supra:* "So far as defects.... result wholly from the operations of nature, the proprietor at whose front they exist is without responsibility for them. Therefore, where ice has accumulated upon a sidewalk to a dangerous extent it is the duty of the municipality to remove or cover it within a reasonable time after its formation."

The anomolous part of the present statute is that it purports, expressly, to relieve the city from its liability and to transfer that liability to the adjoining property owner.

The language used on page 451 of the opinion in the Willoughby case was carefully chosen and the part of the opinion which says: "Therefore, if the liability is or can be shifted from the municipality to the individual, it must be accomplished by statutory or charter provision or by ordinance adequately authorized by such provision, and, being the creature of statute or such ordinance, it can be no greater than that specifically imposed thereby. Imposition upon abutting owners of a duty to clear walks of snow and ice, with a provision of a penalty by fine and costs for failure to do so or for clearing the same by the municipality and collection of the cost from the abutting owner, is not sufficient to render the individual, instead of the city, liable for injuries sustained by reason

of snow or ice thereon. 'The labor performed by those who obey and the fines and expenses paid by those who do not, measure the extent of the advantages . . . derived . . .' "

And further, at page 452: "It has not been held, and we are not aware of any case in which it has been claimed, that such charter provision imposed upon the property owner any liability to a person injured, for failure to remove snow or ice, and an ordinance merely requiring property owners to do so, and providing a penalty for failure, is insufficient to create such a liability," citing *Stevens vs. Neligon, supra,* page 313.

And at page 453: "The assistance to the city which is obtained under ordinances making it the duty of abutters to remove snow and ice from the sidewalks adjoining their property relieves, to that extent, the burdens of labor and expense which it otherwise would necessarily, in discharge of its municipal duties, be subjected to, but the city is 'in no degree exonerated from its obligations in these particulars in consequence of the adoption of (such) ordinances.' The remedy of persons injured for damages sustained in consequence of snow and ice upon a sidewalk remains exclusively against the city."

And again, at page 453 of the Willoughby case: "The distinction between cases where dangerous conditions have been created by individuals and in which they are held liable for the consequences under their common-law obligations as creators of a nuisance, and those relating to the consequences following neglect of a duty imposed by statute or ordinance to maintain, repair, or clear sidewalks, is manifest and radical. The decided weight of authority is that no liability to travelers or the city for injuries results from failure to comply with such statute or ordinance," citing 41 A.L.R. 217; 93 A.L.R. 803.

And at page 455: "As we have pointed out, the placing of the duty of keeping sidewalks free of snow and ice upon the adjoining property owner—which was all that section 3 of the 1935 act expressly provided for—of itself would not carry with it to the property owner liability for injuries occasioned by failure to perform that duty."

And further, on the same page: "Liability for damages for sidewalk accidents is potentially formidable—a fall on an icy sidewalk is often serious in its consequences and the damages heavy. It is certainly reasonable that imposition of such

a new and serious liability upon an individual may not be accomplished by inference or unless expressly provided."

One of the difficulties in the way of recovery on the part of the plaintiff in the Willoughby case was that in the 1935 act there was no provision for notice to the abutter of any action, similar to that which is contained in the 1937 act, and this was especially applicable since the injuries alleged to have been received were sustained on February 15, 1936 and before the changed legislation of 1937.

Legislation in Connecticut which fastens upon a street rail-way corporation, organized under the laws of the State of Connecticut, the duty to make certain repairs in the roadway adjoining its rails, has been sustained. *Coburn vs. Connecticut Company,* 84 Conn. 654, where, at page 657, our Supreme Court said: . "This section creates a duty where before there was none, and through its operation there exists a liability, by force of §2020, which was not recognized at common law. The liability is not one which rests upon common-law negligence. It rests upon the failure to perform a governmental duty which the legislature has seen fit to have cast upon street railways. It creates an arbitrary standard of duty which is measured by the requirements of this governmental duty, in order that the demands of public travel may be met. Its foundation is entirely unlike that of common-law negligence."

And at page 658: "We are of the opinion that in a proper case a party injured may have his election whether he will avail himself of the remedy of the statute or that of the common law."

By way of distinguishing the imposed liability in the Coburn case from the attempted statutory imposition of liability on the abutting owner in the instant case, it may be observed that the defendant, Connecticut Company, was acting, fundamentally, as a private corporation and, as a part of the permission granted to it as a corporation, it was using the public highways for uses not available to any individual—much less to any abutting owner.

In *Montgomery vs. Branford,* 107 Conn. 697, at page 705, our Supreme Court said: "But mere legislative enactment can never create a demand against a party who was not bound before, either legally or equitably. . . . The effect of the Act in question, if construed as claimed, would be to divest the property, and that too upon a consideration altogether past

and gone."

And at page 706: "The legislature may cure . . . irregularities and imperfections in tax proceedings, but it cannot . . . take the property of one person and transfer it to another."

And at page 707, citing from *Royster Guano Company vs. Virginia,* 253 U. S. 412, 415: "The classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."

This differentiation is to be considered in connection with the claim made in argument and brief by the defendant that it does not appear that the provision purported to be embodied in this legislation applies to any property owner outside of the City of New Haven.

Continuing further, on page 708, our Supreme Court said in the Montgomery case: "The classification is not between any classes of leases throughout the State, or even in Branford. Neither is it based on differences between different kinds of property or between owners in different situations. Neither taste, policy, difference of situation, or the like, or in fact any reason, is apparent in the classification made. A special exception is made but without basis for its support. . . . This, unquestionably, is class legislation. The taxation of a class must apply to all within the class, be uniform in its operation, reasonable and not arbitrary."

And in another phase of the same litigation, at 109 Conn. 388, at page 392, our Supreme Court said: "In these respects it attempts to effect the same purpose as the Validating Act which was involved in the former case. What we said of that Act *pari materia* has equal application to the present legislation. It is undeniably arbitrary and not based upon any real and substantial difference having a relation to the subject of legislation so that all persons similarly circumstanced shall be treated alike."

And at page 393: "If a tax is imposed which is 'in effect and purpose a denial to one of the enjoyment of rights indicated in the Constitution and the enjoyment of which it secures equally to all, or is a seizure of property of one for the benefit of another, or is an uncompensated confiscation of

property, the law authorizing such exception is in violation of mandates contained in our Constitution, and probably in all American constitutions, and is therefore void,'" citing *State vs. Travelers Ins. Co.,* 73 Conn. 255, 265, 266; and quoting therefrom at page 269, as follows: "The Fourteenth Amendment seeks to add the security of national protection to the two guarantees common to the State Constitution, by which life, liberty and property are free from invasion, except under the authority of law consistent with the Constitution, and by which any person or class of persons within State jurisdiction is secured against hostile discrimination in providing equal protection under the law in the enjoyment of rights belonging to all."

In *International Paper Company vs. Commonwealth of Massachusetts,* 246 U. S. 135, 142, the Court said: "When tested, as it must be, by its substance—its essential and practical operation—rather than its form or local characterization, such a license fee or excise is unconstitutional and void as illegally burdening interstate commerce and also as wanting in due process because laying a tax on property beyond the jurisdiction of the State. . . ."

"Thus the rule of uniformity must be observed with respect to the penalty as well as with respect to the tax. Also, if enforcement of the tax must be limited to particular property, enforcement of the penalty must be subject to the same limitation. It would be absurd to say that a tax could be enforced only against a particular lot on which it is a burden, but that the penalty for non-payment of it might be enforced against any other property of the owner. A tax imposed like this, without regard to a cash valuation, cannot be sustained by the general clause of the section of the constitution we have referred to. . . . The liability provided in the charter is one which subjects the owner to a personal action, and, for the reasons we have stated, it cannot be sustained. The duty to construct and to maintain sidewalks, being in the nature of a tax, is one that is owing only to the city, just as the duty to pay taxes for local improvements imposed in any other way. It is not, and from its very nature cannot be, a duty owing to third persons. . . . Now, whether it is competent for the legislature to make one liable to private persons for failure in the duty to pay taxes of any kind to the state or municipal corporations, is a very grave question." *Noonan vs. City of Stillwater,* 33 Minn. 198, 204, 22 N.W. 444, 447.

The general rule is that no common-law duty rests upon the owner or occupant of premises abutting on a public street to keep the sidewalk in repair; consequently, such an abutting owner is not liable for a defect in the sidewalk in front of his premises, which he does not create. 41 A.L.R. 212 (Anno.).

Abutting owners may be held liable for injuries resulting from defects in sidewalks, under charter provisions imposing upon them the duty of keeping the sidewalks in front of their property in repair, and expressly making them liable for injuries occasioned by reason of the defective condition of such walks. 41 A.L.R. 222 (Anno.).

In this connection it should be observed that the statute here invoked expressly purports to make the property owner responsible to the member of the traveling public who is injured.

"In general every partial or private law which directly proposes to destroy or affect individual rights or does the same thing by restricting the privileges of certain classes of citizens and not of others, when there is no public necessity for such discrimination, is unconstitutional and void." 6 R.C.L. p. 417, §413.

"Efforts are not infrequently made by interested parties to procure legislation in their own behalf against other classes of the community, but such legislation is not favored by the courts and will be upheld only when it is strictly within the legitimate power of Congress or the state or municipal legislatures." 6 R.C.L. p. 417, §413.

The equality clause of the federal constitution is not necessarily infringed by special legislation or by a legislative classification of persons or things. This clause only requires that the same means and methods be applied impartially to all the constituents of a class, so that the law shall operate equally and uniformly upon all persons in similar circumstances. It does not prohibit legislation which is limited either in the objects to which it is directed or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike under like circumstances and conditions. 6 R.C.L. p. 418, §414.

Although the decision in *Flynn vs. Canton Co. of Baltimore,* 40 Md. 312, did not involve the construction of a statute which expressly purported to place upon the property owner liability to an injured traveler by reason of the existence of or non-removal of or non-coverage of snow and ice upon a side-

walk, nevertheless it does contain some pertinent comments upon the power of the legislature to make the property owner directly responsible to an injured traveler for failure to remove or cover snow and ice in connection with an ordinance to that effect (p. 324): "Does liability to a private action follow from neglect to perform the duty or service thus prescribed? In our judgment it does not. The whole design and effect of this ordinance, was to secure the proper application of whatever labor and means were necessary to discharge the obligation then resting upon the city to keep its streets in a condition to be safely traveled. The work enforced under it, and the expense of doing it when performed by the employees of the city, together with the fines or penalties for neglect which may be imposed and collected, relieves the city to that extent from charges to which it would be otherwise subjected. Stated in a different form, our view of the effect of this ordinance is this: at the time of its passage it was the duty of the city to remove snow and ice from the sidewalks of its streets, so as to render them safely passable. The city was then provided with the means and power to discharge that duty. In the exercise of that power, it saw fit to provide by ordinance that the owners and occupants of premises abutting the sidewalks, should either remove the snow and ice therefrom, or be charged with the cost of such removal if done by its own officers or employees, besides being subjected to a penalty for each neglect. The property owners were thereby made the agents of the city for that purpose, just as the police force was. The two are placed on the same footing with respect to the liability we are now considering. It is made *the duty* of the former to do it in the first instance, and *the duty* of the latter to cause it to be done in case of neglect or refusal by the former. If a private action for damages lies against the former by reason of neglect to discharge *the duty* imposed by this ordinance, it lies equally against the latter. If it lies against the latter, then every ordinance defining in similar terms *the duties* of police officers, street commissioners, and other officials, agents or employees of the city, subjects them to a like responsibility. We cannot think such a result was ever contemplated by the framers of ordinances of this character. We find it supported by no adjudged case, and in our opinion it is not sustained by any sound legal principle. Again the persons upon whom this ordinance operates are provided with no means, and armed with no power adequate to meet

the responsibility that would be thus imposed on them. They are required to perform this service for the benefit of the public, either by their own labor, or through their own private and unaided resources. The proposition contended for by the appellant would subject to the same liability not only the resident owners and occupants of property, but *non-resident* owners of vacant lots and houses, and *persons having charge*, etc. . . . The duty or service here required is for the benefit of the public, and in consideration of no private pecuniary gain to those upon whom it is imposed. It is not like the case where an individual is bound by a private statute under which he derives a benefit, or by a certain tenure to keep a road or bridge in repair, nor like the case of turnpike companies or other private corporations charged with the performance of certain duties by the Acts under which they are incorporated. In such cases the duty is perfect and binding at all times, and its neglect is followed by this responsibility, because it is founded on a valuable consideration or made the condition of the grant. Such being the nature of the duty required, and such being the character of the ordinance in question, we are of opinion the only liability resting upon the property owner is that which the ordinance itself imposes, viz.: the prescribed fine or penalty for each neglect, and the cost of removal in every instance of his refusal or neglect. By enforcing these, every object the ordinance was intended to accomplish will be attained. The liability of the parties upon whom it operates extends no further, and against them an action like this cannot be maintained."

The first case recorded, in the English decisions, in which it was held that a private person might have the benefit of an action against the person who neglected to conform with the statutory duty was *Crouch vs. Steel*, 3 El. & Bl. 402, 118 Eng. Rep. 1193. There, by an Act of Parliament, it was made the duty of ship-owners to keep on board their ships a sufficient supply of medicine suitable to accidents and diseases arising on sea voyages. A seaman who had suffered special injuries from neglect of this duty, brought an action on the case for damages against the ship-owner and the Court of Queen's Bench held he was entitled to maintain it, notwithstanding the act had provided a penalty for such default, recoverable against the ship-owner at the suit of any person. One of the reasons for so holding was stated to be that "the Act relied on in that case provided a benefit for the seamen

as a class. It required ship-owners who derived gain and profit in the prosecution of their private business from the labor and services of seamen, to discharge a certain reasonable duty for the preservation of the health and comfort of those in their employment, and upon this view of the statute, we think the decision in that case is rested."

The decision in that case was really based upon the theory previously expressed that "in every case where a statute enacts or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, and for the recompense of a wrong done to him contrary to said law." *Flynn vs. Canton Co. of Baltimore, supra,* p. 328.

It was further said in the case of *Flynn vs. Canton Co. of Baltimore* (p. 328) that: "The distinction between that Act and this ordinance is broad and obvious. The latter was not enacted for the benefit of the plaintiff, as an individual, or as one of a particular class, but for the public at large. She was not in the employment of the defendants, and they were deriving no advantages from her services or labor. It belongs to an entirely different class of legislation."

The same distinction is apparently applicable to the instant case. The plaintiff has and had no contractual or other direct relation to the defendant. The plaintiff is one of a class and is in no different position than any other traveler upon any highway in any part of the State—as distinguished from a specific traveler upon a highway in the City of New Haven.

Another consideration to be borne in mind in determining the responsibility of the owner or abutter to a traveler is forcibly stated in the case of *Heeney vs. Sprague,* 11 R. I. 456, at page 461, where the then Chief Justice, in writing the opinion, said:

"The question is, whether a person neglecting such a duty is subject not only to the penalty prescribed, but also to a civil action in favor of any person specially injured by the neglect. If the liability exists, it is quite a formidable one. A fall on the ice is often serious in its consequences. The damages resulting from it may amount to thousands of dollars. And under the ordinance the liability, if it exists, may be visited upon either the owner or the occupant of the abutting premises, or upon any person having the care of them. And further, if the liability exists under the ordinance in ques-

tion, it exists, *pari ratione*, under every ordinance prescribing a similar duty. To hold that it exists is therefore to recognize, outside the legislature, a legislative power as between individuals which, though indirectly exercised, is nevertheless, in a high degree, delicate and important. This we ought not to do, unless upon principle or precedent our duty to do it is clear; for we do not suppose that the creation of new civil liabilities between individuals was any part of the object for which the power to enact ordinances was granted."

The application of this expression of opinion to the case in question of course is to be qualified by the consideration that the liability purporting to be imposed is, in this case, directly imposed by the specific statement in the act of the legislature and not by implication from an ordinance.

*Kirby vs. Boylston Market Association,* 80 Mass. 249, 252, is cited as an authority for the proposition that such vicarious liability may not be imposed upon the property owner.

The distinction must be observed that the right of action, in that case, was claimed to arise inferentially only out of the existence of the ordinance placing the duty upon the property owner in describing penalties for failure to comply with that duty. Of course, in the instant case, the city, by the terms of the statute out of which the duty is claimed to arise, purports expressly to be exempted from liability and the liability is expressly fastened upon the adjoining or adjacent owner.

The case of *Pisani vs. D'Antonio, et al.,* decided by Foster, J., and reported in 6 Conn. Sup. 44, goes no further than to decide that the present private act, by its express terms, absolves the defendant City of New Haven, from liability for injuries occasioned by a defective sidewalk including a dangerous condition caused by snow and ice, citing *Wladyka vs. City of Waterbury,* 98 Conn. 305, as an authority for the existence of power "limiting the existing statutory action for injuries from snow and ice on the sidewalk."

In that case the constitutionality of an action purporting to fasten liability upon the adjoining owner or abutter for injuries occasioned by the existence of snow and ice upon the sidewalk was not in issue nor was it passed upon.

The pertinent phase in the decision in the Wladyka case, supra, is found at page 309, where our Supreme Court said: "No cause of action can arise in Waterbury, due to ice and

snow on any of its sidewalks, because of this provision in its charter. The only cause of action in which snow and ice upon a sidewalk of Waterbury can have any part in furnishing a cause of action, is that provided by this charter provision,—one in which there is a structural defect in the sidewalk, and this structural defect has been rendered more dangerous by reason of snow or ice upon the walk at this point."

It should be observed that the adjoining property owner was not a party defendant in the Wladyka case and that the action was brought directly against the municipality and verdict and judgment against it sustained but entirely by reason of the statutory provision.

The reasoning in *Hanley vs. Fireproof Building Company,* 107 Neb. 544, 186 N.W. 534, 24 A.L.R. 382, is interesting and, in some respects, pertinent to the decision of the instant demurrer, viz. (p. 548): "It must be noted, however, that the cases that support this rule carefully differentiate between such ordinances and ordinances where the duties enjoined are due to the municipality or to the public at large. As to this class of ordinances the authorities are almost, if not quite, unanimous that no cause of action arises to an individual against one who neglects to perform the duties enjoined. . . . It remains for us to determine to which class of ordinances the one in question belongs. Was it passed by the city of Omaha to provide for the safety and protect the lives of persons traveling the streets, or was it passed by such city for the purpose of imposing upon property owners a part of the duty of the municipality to the public for the benefit, not primarily of the individuals comprising the public, but of the municipality itself. This question is easily answered. Keeping in mind that the fee of the streets and sidewalks is in the municipality, that the duty of keeping such streets and sidewalks in safe condition for travel rests primarily upon the municipality, that the accumulation of ice and snow on the sidewalks, while an inconvenience, is not necessarily a menace to the safety or life of pedestrians, that its removal from the miles of sidewalks usually found in a city is impracticable and almost impossible by ordinary governmental agencies, it seems clear that the duty of the lot owners to remove the snow and ice is imposed by the city as a means of carrying out its obligation to keep the sidewalks in condition for travel, and is owed to the general public in its corporate capacity, and not to the individuals composing such public. . . . An examination of these

cases shows that the walks and approaches involved were upon the private property of the landlord. . . . The appellant contends that the accumulation of ice and snow on the sidewalk in question constituted an 'attractive nuisance', and he has cited authorities to this effect. We do not see how this changes the situation. If, as we have found, the defendant owed no duty to the plaintiff to remove the ice and snow, then he would owe her no duty to prevent the creation of an 'attractive nuisance' by the accumulation of ice and snow, and, owing no duty to her, he cannot be made liable to her for the failure to perform a duty he owed to the municipality."

By inference, at least, the allegations of the complaint show that the defendant owned the land abutting the walk where the plaintiff was injured for some time before the private act upon which the cause of action is based was enacted.

Prior to or at the time the defendant acquired the land, the defendant had no reason to believe that the vicarious liability now claimed against her then inhered in or would be incident to the acquisition or the ownership of land in the City of New Haven.

No consideration or benefit accrued to her which would, in any way, modify or alleviate the purported imposed burden of liability to third persons. While the special act purports to fasten this liability expressly upon the land owner in New Haven and, also, purports to absolve the city from its liability which came down upon it in direct descent from the original Public Act of 1672, yet the land owners of Connecticut in no city, other than New Haven, have had such statutory liability imposed upon them.

Finally, this observation is important. Other acts, ordinances and general statutes have been interpreted which impose liability only after the lapse of a certain time—that is, a certain number of hours—after the snow had ceased falling or the ice and snow had come upon the sidewalk—but in this case no such period for preparation or antecedent to a default on the part of the property owner is provided. The provision of section 2 imposes upon the abutting owner the duty "of keeping sidewalks in said city free from snow and ice."

The liability comes in upon the failure of the owner to keep the sidewalks "free from snow and ice" because that is the only breach of duty referred to and this is emphasized by the express allegation of this section of the statute and the

other section of the statute in the plaintiff's complaint.

Anyone acquainted with the varying Connecticut climate knows that it would be physically impossible to keep any sidewalk in New Haven—or any part of Connecticut—"free from snow and ice."

While it would be feasible to clear off the snow and ice within a certain number of hours after it ceased falling or to sprinkle sand or ashes upon it within a certain limited time, yet that is not the requirement of the statute nor is that sort of care involved in the conduct which might lead to the "breach of duty on the part of the property owner to keep such sidewalk free from snow and ice" as distinctly set out in the present section 2, which amended the former section 3 of the private act.

An examination of the original, 1935 Special Act, No. 330, shows that that act contained the same bald provision because, in section 3 of that act, which is the present section 2 of the amended act, it was provided that: "The duty of keeping sidewalks in said city free from snow and ice shall be upon the adjoining property owner. . . ."

The amendment required that notice be given to the owner, but neither in the amendment nor in the original act is there any time of grace or opportunity for the owner to take any action, either by way of removal of the snow and ice or by way of sanding it, before the imposed statutory liability might be fastened upon the owner.

For all of the reasons hereinbefore set out and stated the demurrer is sustained on all grounds.