*153
 
 Hast, J.
 

 The questions presented by the record in this case are: (1) Where a sidewalk itself is in good repair, under what circumstances can a municipality be held liable for damages to a pedestrian caused by his falling upon ice formed on such sidewalk from water which was emitted from a drainpipe on the adjoining" private property? (2) Since liability, if any, is dependent upon notice to the defendant city, must such notice relate to the presence of the particular ice on the sidewalk upon which plaintiff slipped and fell, or may such notice arise from the existence of the drainpipe which carried the water upon the sidewalk where it froze, causing plaintiff’s fall and injuries?
 

 It is a general rule that, in the absence of a special statute, a municipality is not liable for injuries resulting from the usual and natural accumulation of snow and ice on its streets and sidewalks. The law does not require what is unreasonable. It does not condemn an act or omission as negligent which can be done or prevented only by the exercise of extraordinary exertion or by the expenditure of extraordinary sums of money. The reasons for the rule above stated are that a municipality should not be required by law to remove from the miles of sidewalk within its limits the natural accumulation of ice and snow, because such a requirement is impracticable from the nature of things, and when these conditions exist they are generally obvious so that travelers know of them and assume the risk.
 
 Chase
 
 v.
 
 City of Cleveland,
 
 44 Ohio St., 505, 9 N. E., 225;
 
 City of Norwalk
 
 v.
 
 Tuttle,
 
 73 Ohio St., 242, 76 N. E., 617;
 
 Berger
 
 v.
 
 Salt Lake City,
 
 56 Utah, 403, 391 P., 233, 13 A. L. R., 5, citing the two previously cited Ohio cases;
 
 Graham
 
 v.
 
 City of Chicago,
 
 346 Ill., 638, 178 N. E., 911;
 
 Hopson
 
 v.
 
 City of Detroit,
 
 235 Mich., 248, 209 N. W., 161, 48 A. L. R., 1150;
 
 Bailey
 
 v.
 
 Oil City,
 
 305 Pa., 325, 157 A., 486, 80 A. L. R., 1148;
 
 Harrington
 
 v.
 
 City of Buffalo,
 
 121 N. Y., 147, 24 N. E., 186;
 
 Dapper
 
 v.
 
 City of Milwaukee,
 
 107 Wis., 88, 82 N.
 
 *154
 
 W., 725;
 
 Reedy
 
 v.
 
 St. Louis Brewing Assn.,
 
 161 Mo., 523, 61 S. W., 859, 53 L. R. A., 805.
 

 Section. 3714, General Code, among other things, provides: “The council shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts, within the corporation, and shall cause them to be kept open, in repair, and free from nuisance.” But this statute does not change the general rule above stated as to accumulation, from natural ■causes, of snow and ice on streets or sidewalks.
 
 Chase
 
 v.
 
 City of Cleveland, supra,
 
 at 513.
 

 A different rule is applied where the ice or snow accumulates wholly or in part through the fault of the municipality, as where, because of a defect in a sidewalk, ice is caused to form which would not otherwise do so
 
 (Evans
 
 v.
 
 City of Concordia,
 
 74 Kan., 70, 85 P., 813, 7 L. R. A. [N. S.], 933;
 
 Holbert
 
 v.
 
 City of Philadelphia,
 
 221 Pa., 266, 70 A., 746, 20 L. R. A., [N. S.], 201;
 
 Jackson
 
 v.
 
 City of Grand Forks,
 
 24 N. D., 601, 140 N. W., 718, 45 L. R. A. [N. S.], 75;
 
 Noonan
 
 v.
 
 City of Stillwater,
 
 33 Minn., 198, 22 N. W., 444), or where the formation of ice on a sidewalk is due to the failure of a municipality to prevent the overflow of water or to repair a leaking hydrant
 
 (Decker
 
 v.
 
 Scranton City,
 
 151 Pa., 241, 25 A., 36).
 

 These exceptions to the general rule grow out of the fact that a municipality in this state has exclusive control of its streets and public ways and is responsible for their good condition. When at fault in this regard, the municipality incurs the responsibility placed upon it by the provisions of Section 3714, General Code, above quoted. And since the liability of a municipality for injuries resulting from defects and obstructions in its streets and public ways is predicated upon the neglect of the municipality to remove such defects or obstructions, or to guard against injury therefrom, after actual or constructive notice of
 
 *155
 
 their existence, it is immaterial that the defects or obstructions may have been originally caused, not by the municipality itself, but by trespassers or wrongdoers.
 
 City of Ironton
 
 v.
 
 Kelley,
 
 38 Ohio St., 50;
 
 Lawrence
 
 v.
 
 Scranton City,
 
 284 Pa., 215, 130 A., 428, 41 A. L. R., 454;
 
 McDowell
 
 v.
 
 Village of Preston,
 
 104 Minn., 263, 116 N. W., 470, 18 L. R. A. (N. S.), 190;
 
 Cohen, Admrs.,
 
 v.
 
 Mayor of New York,
 
 113 N. Y., 532, 21 N. E., 700, 4 L. R. A., 406.
 

 The fact that an abutting property owner may be required by law to keep the sidewalk in front of his premises in good repair and free from defects and obstructions does not operate to relieve the municipality of liability for injuries resulting from such defects or obstructions.
 
 Wilhelm
 
 v.
 
 City of Defiance,
 
 58 Ohio St., 56, 50 N. E., 18.
 

 Consequently, by the weight of authority, it is a general rule that if a downspout or drainpipe is constructed from the eaves trough of an adjoining building in such a way or so defectively as to cast water upon a sidewalk within a municipality, such munieipalitity is liable for injuries to pedestrians caused by ice resulting from the freezing of such water upon the walk, provided the municipality has notice of the presence of such ice on the sidewalk for a sufficient length of time before the injury to have cured the defect or to have prevented the injury.
 
 Berger
 
 v.
 
 Salt Lake City, supra;
 
 see annotations 13 A. L. R., 37; 80 A. L. R., 1157;
 
 Shaw
 
 v.
 
 City of McKeesport,
 
 298 Pa., 119, 148 A., 44;
 
 City of Denver
 
 v.
 
 Willson,
 
 81 Colo., 134, 254 P., 153;
 
 Gillrie
 
 v.
 
 City of Lockport,
 
 122 N. Y., 403, 25 N. E., 357;
 
 Reedy
 
 v.
 
 St. Louis Brewing Assn., supra; City of Muncie
 
 v.
 
 Hey,
 
 164 Ind., 570, 74 N. E., 250.
 

 The evidence in this case shows that the ice froze on the sidewalk after sundown and that the plaintiff slipped and fell upon it about 7:30 o’clock the same evening. There was no evidence of actual notice to the city of the existence of the ice on the sidewalk, and
 
 *156
 
 clearly there was' insufficient time for constructive notice of the presence of such ice. There was, therefore, no liability established against the defendant city if notice relates only to the presence of the ice itself.
 
 Village of Leipsic
 
 v.
 
 Gerdeman,
 
 68 Ohio St., 1, 67 N. E., 87;
 
 Eickelberg
 
 v.
 
 City of Waterloo,
 
 197 Ia., 1219, 198 N. W., 638;
 
 Jennes
 
 v.
 
 City of Norwich,
 
 107 Conn., 79, 140 A., 119.
 

 The downspout and drain located on the premises adjoining the sidewalk in question had been constructed more than 10 years before the date of plaintiff’s injury. The plaintiff contends that the defendant city was therefore, during that period of time, chargeable with notice of the potential capacity of the downspout and drain on the adjoining lot to carry upon the sidewalk water which might freeze and become a nuisance as it did on the night plaintiff was injured; and that, in order to recover, the plaintiff was not necessarily required to show that the defendant had notice of the presence of the particular strip of ice on the sidewalk on the night in question, but to show only that the city knew of the physical condition of the sidewalk and the premises adjoining it, and that such situation would sooner or later cause an icy condition on the sidewalk by reason of which someone would probably be injured. This raises the question as to whether the defendant city was bound to take notice of the physical condition of the adjoining property outside of the street or sidewalk itself as a possible source of danger before such property or the use of such property actually interfered with the good condition of the street or sidewalk with which the city was immediately concerned. If the city was so chargeable, unquestionably the city had constructive notice of such conditions and of the potential nuisance created thereby within a reasonable time after the house, including downspout and drain, was constructed.
 

 The trial court took the view that the defendant city
 
 *157
 
 was chargeable with notice of the existence of a nuisance because of the presence of the drainpipe, which produced the icy condition of the sidewalk. In the course of its general charge to the jury, the trial court said:
 

 “The court says to you that if you find that plaintiff has proven by a preponderance of the evidence that there was a pipe which drained water from the roof of the house at 416 Bedford avenue, Northwest, in such a manner that it caused an unnatural accumulation of water to drain upon and across the sidewalk as plaintiff claims, that would constitute a nuisance * * *.
 

 “The court says to you at this point
 
 in regard to the matter of notice
 
 as to the condition existing
 
 the court is not referring to the particular accumulation of ice that plaintiff claims ivas there, but the court is referring,
 
 when it speaks of nuisance,
 
 to the claim that plaintiff has made as to this alleged drainpipe existing, which the plaintiff claims had been there for some time-and which permitted an unnatural flow of water.”
 
 (Italics ours.)
 

 In some cases, “the view has been taken that the liability of a municipality for injuries incurred by reason of icy sidewalks does not extend beyond responsibility for conditions existing within the walk or street. It has been held that a municipality has no inherent power, as a public corporation, to go upon private property outside-a highway to remove melting snow and stop the discharge of water from a pipe, in order to prevent the accumulation of ice on a sidewalk, since the pipe and the accumulated snow do not constitute a nuisance
 
 per se;
 
 that such power is not conferred on it by reason of its statutory duty to keep its streets in repair; and that, therefore, it is not liable for injuries sustained by persons slipping on such accumulations of ice on the sidewalk because of its failure to abate such outside conditions.” 25 American Juris-prudence, 802, Section 520, citing
 
 Udkin
 
 v.
 
 City of New
 
 
 *158
 

 Haven,
 
 80 Conn., 291, 68 A., 253, 14 L. R. A. (N. S.), 868;
 
 Gaylord
 
 v.
 
 City of New Britain,
 
 58 Conn., 398, 20 A., 365, 8 L. R. A., 752.
 

 Other authorities indicate that a municipality may be chargeable with notice of a potential nuisance due to the flow of water from a drainpipe on an adjoining lot upon a street or sidewalk, if it be shown .that recurrently an icy or unsafe condition has been deii.rnt.eiy created thereby, as distinguished from a natural accumulation of ice, for such a period of time as to indicate to the authorities of the municipality that such situation has a dangerous aspect and if continued would probably cause injury to pedestrians who use the street or sidewalk.
 
 Young
 
 v.
 
 Town of West Hartford,
 
 115 Conn., 384, 161 A., 523;
 
 Beane
 
 v.
 
 City of St. Joseph,
 
 215 Mo. App., 554, 558, 560, 256 S. W., 1093;
 
 Casper
 
 v.
 
 Sioux City,
 
 213 Ia., 69, 238 N. W., 591;
 
 Tremblay
 
 v.
 
 Harmony Mills,
 
 171 N. Y., 598, 64 N. E., 501;
 
 Livingston
 
 v.
 
 City of St. Joseph,
 
 174 Mo. App., 636, 161 S. W., 304;
 
 Carl
 
 v.
 
 City of New Haven,
 
 93 Conn., 622, 107 A., 502;
 
 City of Covington
 
 v.
 
 Keal,
 
 280 Ky., 237, 133 S. W. (2d), 49;
 
 City of Denver
 
 v.
 
 Willson, supra.
 
 In such cases notice arises from the presence of an unnatural accumulation of ice upon the sidewalk, and not from the physical conditions on the adjacent lot.
 

 None of the neighbors and residents on the street at the point of the accident in question, not even the plaintiff himself, who had resided for two years only a block away and who had used the street in going to and coming from his place of business, had seen at any time any ice on the sidewalk as the result of water being thrown thereon by the drainpipe in question. The plaintiff testified on this subject as follows:
 

 “Q. Mr. McCave, how long have you lived at your address prior to the time of the accident1? A. I would say about two years as near as I could tell.
 

 “Q- And you made use of Bedford avenue to go
 
 *159
 
 to work from your home when you walked? A. I mostly do.
 

 “Q. And you use the east side of Bedford avenue about as much as the west side? A. I would say I did.
 

 “Q. And, I believe you said, if I recall, you had never noticed this drain? A. No, I never had.
 

 “Q. And had you ever noticed any ice in front of this spout down there at 416? A. No.
 

 “Q. You ever notice any water come down out of the drain? A. No, sir.
 

 “Q. And you passed there in winter as well as in summer? A. lres, sir.”
 

 Applying the rule of notice through the presence of ice due to the existence of the drainpipe, as above stated, the evidence does not establish liability against the defendant city, and the court erred in its charge on this subject.
 

 Of course, as stated before, if ice caused by freezing water carried upon the sidewalk through a private drainpipe, remains on the sidewalk for a sufficient period of time to charge the municipality with notice of the dangerous condition of the sidewalk because of such ice, the city might be liable for injuries caused thereby, but that situation is not this case.
 

 The judgment of the Court of Appeals is reversed and final judgment is rendered in favor of the defendant.
 

 Judgment reversed.
 

 Weygandt, C. J., Turner,, Matthias, Zimmerman and Bettman, JJ., concur.